IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

HEARST STATIONS INC., d/b/a WCVB-TV,

Plaintiff,

v.

AEREO, INC.,

Defendant.

C.A. No. _____

## COMPLAINT

The plaintiff, Hearst Stations Inc. as the operator of and doing business as television station WCVB-TV in Boston, Massachusetts ("WCVB"), by and through its undersigned counsel, complains and alleges against the defendant, Aereo, Inc. ("Aereo"), as follows:

### NATURE OF THE ACTION

1.      This is an action for copyright infringement arising out of Aereo's unauthorized retransmission of WCVB's over-the-air broadcast programming in Boston.  Aereo has no right, under any license or statute, to retransmit WCVB's copyrighted programming.   Other companies, such as cable, satellite and other telecommunications distributors obtain the consent of WCVB and pay WCVB to retransmit WCVB's signal containing its programming.  Aereo, by contrast, retransmits that same programming to its paying subscribers without permission from WCVB, in clear violation of federal and state law.

2.      WCVB is a leading television station in the Boston television market.  It creates, produces, and broadcasts highly-regarded local news, weather, public safety, health, sports, public affairs, and public interest programming for the Boston community.  WCVB's valuable local programming includes shows such as *Chronicle*, a unique, locally-produced, weekday

magazine show; *CityLine*, an award-winning urban news and feature weekly magazine; and *On The Record*, a weekly political roundtable featuring discussions with local Massachusetts newsmakers, and hours of award-winning local news programming.

3.      Aereo is a commercial, subscription-based "pay-TV" service.  Subscribers pay a monthly fee to Aereo to receive, over the public internet, television programming that is broadcast over the air by various local television stations, including WCVB.

4.      Upon information and belief, Aereo has represented that it carries out its unauthorized acts by: (i) intercepting WCVB's broadcast programming through the use of commercial antenna farms; (ii) altering or converting that intercepted content into a different format suitable for the internet; (iii) creating and storing copies of such altered content; and (iv) transmitting and distributing the intercepted program content by the public internet to paying customers through a subscriber service.  Aereo claims to allow subscribers to watch WCVB's copyrighted content "live" online while WCVB is broadcasting or to watch the recorded content at a later time.

5.      The Communications Act of 1934, which is enforced by the Federal Communications Commission ("FCC"), and the Copyright Act of 1976 work in tandem to balance, promote, and protect the public's interest in accessing television broadcasting over the airways while encouraging the production of copyrightable work.

6.      For example, FCC regulations foster the public good by requiring entities that receive and retransmit over-the-air signals to provide mandatory public interest content, such as closed captioning, video descriptions, and emergency information.

7.      At the same time, the Copyright Act promotes the production of new television content by providing copyright owners with the exclusive right to reproduce their work, prepare

derivative works, distribute, publicly perform, and display their works, and "to authorize" others to take any of these actions.   These exclusive rights encourage the production of valuable television programming, such as *Chronicle, On The Record*, and *CityLine*, and WCVB's local news broadcasts.   Aereo's service undermines the purposes served by the Copyright Act by exposing copyright owners such as WCVB to free-riders such as Aereo, who exploit existing works for their own commercial benefit without incurring the cost of creating or producing the protected work and who distribute and record that work without obtaining the consent of the copyright holder or qualifying for a statutory copyright license.

8.      Other distributors, including cable systems, satellite operators, and other telecommunications companies, obtain WCVB's consent before transmitting and distributing WCVB's local television broadcasts containing its programs.   Aereo, instead, has chosen to intercept WCVB's programming and transmit and distribute it for commercial purposes without WCVB's consent and without qualifying for a statutory copyright license.   As such, Aereo not only gains unfair economic and competitive advantage for itself, it puts at risk the existing copyright scheme contemplated by Congress.

9.      Because it acts outside of the television regulatory scheme, there is no way to ensure that Aereo complies with all the rules designed to protect the public interest, such as those designed to encourage continued production of and public access to local television broadcasts and to ensure viewers' access to important public service content.

10.     In sum, Aereo's business and technology stand in violation of, and threaten to undermine, the carefully balanced statutory and regulatory scheme set up for the broadcast industry, as embodied in part by the Communications Act and the Copyright Act.   Aereo is infringing WCVB's copyrights and this lawsuit seeks to stop that wrongdoing.

## THE PARTIES

11.     WCVB-TV broadcasts over-the-air on Channel 5 (or its digital equivalent). WCVB's main studio is located at 5 TV Place, Needham, Massachusetts 02494.  Hearst Stations Inc. operates WCVB-TV and is the legal or beneficial owner of the copyrighted programming being wrongly retransmitted by Aereo.  Hearst Stations Inc. is a Nevada corporation with its principal place of business at 300 West 57th Street, New York, New York 10019.

12.     On information and belief, WCVB has received more awards than any other commercial media outlet in New England.  Its honors include numerous prestigious, national awards for its original broadcast programming, such as multiple recognitions as Television Station of the Year by the national Gabriel Awards, the National Headliner Award, the Walter Cronkite Award for Excellence in Political Journalism, Alfred I. DuPont-Columbia University Award and the George Foster Peabody Award.  Most recently, WCVB received 12 Local Emmy Awards in 2012, 10 regional Associated Press Awards including "News Station of the Year," and the 2012 National Edward R. Murrow award for Overall Excellence in the Television Large Market category.  The Radio Television Digital News Association awards the National Edward R. Murrow award for Overall Excellence to news organizations that exemplify "the absolute highest standards in serving [their] audience through quality electronic or digital journalism."

13.     WCVB creates, produces, owns, broadcasts, and distributes more than 43 hours per week of original local programming.  That programming provides WCVB's viewers with local news, weather, emergency information, sports, entertainment, public affairs, educational, and health and wellness programming, all of which is highly regarded in the Boston community. Most recently, WCVB provided significant around-the-clock and virtually commercial-free news and public safety coverage in the wake of the Boston Marathon bombings.

14.     Upon information and belief, the defendant, Aereo, is incorporated under the laws of the State of New York and maintains a place of business at 280 Summer Street, Boston, Massachusetts.  Aereo has characterized its business as being based primarily in Massachusetts as well as in one other state, represented that Boston is home to many of Aereo's team members, and stated that its research and development facility is located here in Boston.

15.     On or about May 30, 2013, Aereo publicly launched a subscription-based, online television streaming service throughout the Boston television market, allowing consumers to watch live and/or record WCVB's broadcast television programming.

16.     Upon information and belief, the antenna farms and servers that Aereo uses to provide its services to Boston subscribers are located in or around Boston, Massachusetts.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

18.     This Court has personal jurisdiction over Aereo because Aereo has a place of business, and is engaged in continuous and systematic business, in this District.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(a) because a substantial portion of the events giving rise to WCVB's claims, including WCVB's production of protected works and Aereo's retransmission of those works, occurs in this District.

## FACTUAL BACKGROUND

### A.     The Copyright Act of 1976

20.     The Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, provides for and protects a variety of rights of creators of original audiovisual works.  Among the rights of content

creators protected by the Copyright Act are the exclusive rights to reproduce, distribute, display, and publicly perform the work, to prepare derivative works based on the original work, and to authorize others to exercise any of those rights.

21.    According to the Copyright Act, "to perform . . . a work 'publicly'" means, among other things, "to transmit or otherwise communicate a performance or display of the work . . . to the public, *by means of any device or process*, whether the members of the public capable of receiving the performance or display receive it in the same place or *in separate places* and at the same time or *at different times*."  17 U.S.C. § 101 (emphases added). Similarly, "to 'transmit' a performance or display is to communicate it by *any device or process* whereby images or sounds are received beyond the place from which they are sent."  *Id*. (emphasis added).  The definition of "device or process" includes those "*now known or later developed*."  *Id*. (emphasis added).

22.    The legislative history of the Copyright Act confirms the intent of Congress to cover *all* future technologies used to transmit copyrighted audiovisual works:

> The definition of "transmit" . . . is *broad enough to include all conceivable forms and combinations of wires and wireless communications media, including but by no means limited to radio and television broadcasting as we know them*.  Each and every method by which the images and sounds comprising a performance . . . are picked up and conveyed is a "transmission," and if the transmission reaches the public in [any] form the case comes within the scope of . . . section 106.

H.R. REP. NO. 94-1476, at 64 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5678 (emphasis added).

23.    These rights provide the economic foundation upon which the television production and distribution industries rest.  Program suppliers and broadcasters license works for public performance through various distributors, including cable and satellite television

providers, as well as through other media.

24.     The Copyright Act's right of public performance applies broadly to television distribution.   Congress described the public performance right as extending to "not only the initial rendition or showing, but also any further act by which that rendition or showing is transmitted or communicated to the public."   H.R. Rep. No. 94-1476, at 63 (1976).   As non-exhaustive examples, Congress indicated that "a broadcasting network is performing when it transmits [a] performance; a local broadcaster is performing when it transmits the network broadcast; [and] a cable television system is performing when it retransmits the broadcast to its subscribers . . . ." *Id.*   Congress emphasized that a performance may be accomplished by "all kinds of equipment for reproducing or amplifying sounds or visual images, and . . . systems not yet in use or even invented." *Id.*

25.     Because any commercial service engaged in transmission or retransmission of copyrighted television programming to the public is "publicly performing" the programming, it must acquire a copyright license prior to the transmission or retransmission.   *See* H.R. REP. NO. 94-1476, at 88–89, *reprinted in* 1976 U.S.C.C.A.N. at 5703-04 (stating that "commercial enterprises whose basic retransmission operations are based on the carriage of copyrighted program material" must obtain authorization and pay "copyright royalties . . . to the creators of such programs").

26.     The design of any particular system used to transmit copyrighted programming is irrelevant.   *Any* technology used to retransmit copyrighted audiovisual works infringes the copyright holder's exclusive statutory rights in the absence of a license.

27.     For that reason, retransmitters of broadcast programming, including cable systems, satellite operators, telephone companies, and internet distributors must obtain licenses

to retransmit broadcast television programming, either privately or through use of a statutory copyright license.

28.     Aereo provides the same service to the public as cable and satellite systems (known as multichannel video programming distributors or "MVPDs").   Aereo retransmits copyrighted television broadcast programming to its subscribers (using the public internet) in exchange for a monthly fee.   Unlike cable and satellite MVPDs, however, Aereo has neither a statutory copyright license nor a private copyright license from WCVB for the public retransmission and distribution of WCVB's copyrighted television programming.

**B.     Aereo's Retransmission Service**

29.     Upon information and belief, Aereo has characterized its technology as using banks or arrays of small (dime-sized) antennas that it has installed in the Boston area to capture the over-the-air television broadcast programming of various television broadcast stations in the Boston area, including the programming of WCVB.   After intercepting the signal through its antenna farms, Aereo alters and converts the programming from its original digital broadcast format into a different digital format suitable for retransmission over the public internet.   Aereo subsequently makes and stores copies of this altered programming at Aereo's facilities.   Aereo then makes the altered programming publicly available to its subscribers for viewing on their internet-connected devices, such as laptops, tablets, and smartphones.

30.     Aereo claims that its service enables its subscribers to watch WCVB's programming "live," *i.e.*, at the same time that it is broadcast by WCVB.   Indeed, this is a key aspect of Aereo's service and has featured heavily in its advertising.   Subscribers also may elect to have Aereo record the programming to enable them to view the work at a later time.

31.     Upon information and belief, when a subscriber logs in to Aereo, the subscriber is

offered two options, "Watch" and "Record." The subscriber uses electronic buttons to choose either the "Watch" or "Record" option for an available program. In either case, Aereo intercepts the over-the-air signal containing the requested broadcast programming; routes it through a processor, which alters the format of the programming by transcoding, conversion, and/or compression techniques; and then makes separate copies of the broadcast programming, which Aereo stores on its own servers. Aereo claims that, for a subscriber who has selected the "Watch" option, Aereo retransmits the programming over the internet to the subscriber's device from those separate copies. Aereo also has represented that, even in connection with this "Watch" option, the copies it makes are fixed and not ephemeral, and are stored in their entirety at Aereo's facilities, at least until WCVB's broadcast of the relevant programming has ended.

32.     Upon information and belief, if a subscriber chooses to "Record" a broadcast program, either initially or after beginning to watch a program using the "Watch" feature, Aereo retains on its servers copies of the broadcast program. The subscriber can either view these copies immediately or watch it at a later time. The copies may be retained indefinitely from the time Aereo makes them.

33.     Upon information belief, multiple Aereo subscribers are able to watch the same broadcast programming simultaneously.

34.     Upon information and belief, Aereo transmits and distributes WCVB's programming both inside and outside of the geographical area in which the programming may be received free, over the air. In addition, upon information and belief, Aereo records three different copies each time a subscriber chooses to watch or record a program. In these respects, Aereo's service is wholly unlike a private homeowner's roof-top or set-top antenna, which only allows reception of WCVB's programming within the geographical area of WCVB's "over-the-

air" transmissions.

35.     Aereo's commercial retransmission service exists for the core purpose of intercepting, recording, transmitting, and distributing "over-the-air" broadcast television programming through the internet to the public for profit on a "pay-TV' basis without obtaining a copyright license.   Aereo's commercial retransmission service currently has little other substantial use.

36.     WCVB has not authorized or licensed Aereo to utilize, copy, reproduce, record, alter, transmit, perform, distribute, or create derivative works based upon WCVB's broadcast programming in any manner, or given Aereo permission to authorize others to do so.   Aereo does not qualify for a statutory copyright license to do so under the Copyright Act.   Nor does Aereo qualify as a passive carrier exempt from liability under 17 U.S.C. § 111(a)(3) or for the private, non-commercial antenna copyright exception embodied in 17 U.S.C. § 110(5).

37.     In addition to charging subscribers a fee for its services, Aereo's CEO has testified in other litigation that Aereo plans to further exploit the copyrighted works broadcast over the air, which includes WCVB's works, so it can "sell other stuff" to its subscribers.

**C.     Plaintiff's Copyrighted Programming**

38.     WCVB invests and expends substantial amounts of money, time, energy, and effort to create, produce, advertise, promote, sell, transmit, distribute, perform, and authorize others to distribute, retransmit, and perform its copyrighted audiovisual works.   WCVB also has invested and expended substantial sums in its broadcasting infrastructure and architecture through which WCVB transmits and distributes its copyrighted audiovisual works by broadcast to the public and to WCVB's authorized distributors for retransmission.

39.     WCVB is compensated for its creative efforts and monetary investments primarily

through:   (i) the sale of commercial advertising during WCVB's broadcast schedule; and (ii) carriage arrangements with cable, satellite, and telephone MVPDs, which are authorized to retransmit WCVB's signals containing its programming to their respective subscribers upon negotiating for the right to do so pursuant to Section 325(b)(1) of the Communications Act of 1934, as amended, 47 U.S.C. § 325(b)(1).

40.     WCVB is the legal or beneficial owner of the copyrights in numerous programs that have been, or will be, exhibited over WCVB in the Boston area.   A non-exhaustive list identifying representative samples of such television programs is set forth in Exhibit 1 (the "Television Programs").

41.     Each of the Television Programs is an original audiovisual work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.   WCVB has complied with all applicable copyright registration requirements.   Each of the Television Programs has been or will be registered with the United States Copyright Office, or is or will be the subject of an application for registration filed with the Copyright Office.   Copyright registration certificates or other documentation demonstrating compliance with Sections 408(f) and 411 of the Copyright Act, 17 U.S.C. §§ 408(f) and 411, and implementing Copyright Office regulations, corresponding to the Television Programs listed in Exhibit 1, are attached as Exhibits 2–5.

42.     The Copyright Act does not permit Aereo to misappropriate for itself the value of WCVB's television programming by copying it, altering it (by any means of technological manipulation), distributing and transmitting it over the public internet, or publicly performing it to its paying subscribers without a license, or permission, or consent from WCVB.

43.     Aereo's conduct constitutes reproduction, distribution, and public performance of,

and the creation of derivative works based upon, WCVB's copyrighted television programming without a license from WCVB.

44.     To the extent Aereo claims that its subscribers are responsible for making unauthorized copies of WCVB's works, WCVB alleges in the alternative that, whenever Aereo's subscribers reproduce any of WCVB's copyrighted works in connection with Aereo's retransmission of those works, Aereo contributorily infringes WCVB's exclusive reproduction rights.  Aereo intentionally induces and encourages its subscribers to directly infringe WCVB's copyrights by reproducing programming without authorization.  Aereo benefits financially when its subscribers directly infringe by reproducing WCVB's programming without authorization, and Aereo operates its service with the goal that its subscribers will do so in the ordinary operation of Aereo's service.

45.     Aereo's method of conducting business destabilizes the free, over-the-air television broadcast industry.   If Aereo is permitted to profit from the unauthorized retransmission of copyrighted television programming, it will encourage other infringers to do the same.  As a result, the competitive and economic harm facing WCVB would be extended to other holders of programming copyrights.

46.     By commercially exploiting WCVB's programming without authorization, Aereo competes directly with WCVB and its lawful distributors, and Aereo disadvantages and undermines WCVB's substantial creative and financial investment in the creation and broadcast of its programming and other content.   Aereo further free-rides on WCVB's substantial investment in its broadcasting infrastructure.   Aereo is willfully, wantonly, and unfairly exploiting WCVB's programming and broadcasts for its own commercial benefit.

47.     Aereo's infringing and unlawful conduct is causing and will cause WCVB

substantial and irreparable injury by, among other things, undermining its business relationships with and ability to license its content to other retransmitters of television programming and other services that deliver television programming to devices via the internet.  Aereo's conduct also interferes with WCVB's ability to stream its own programming via the internet.  In addition, Aereo's conduct prevents WCVB from enforcing its standards for quality and other that form an integral part of copyright licensing to others for transmission and distribution of WCVB's programming.  Finally, Aereo's conduct will adversely affect WCVB's ability to sell advertising, obtain sponsorships, and otherwise derive value from WCVB's programming because WCVB is unable to track viewers who watch WCVB's programming via Aereo's rogue retransmission service.

48.     If Aereo is permitted to profit from the unauthorized retransmission of copyrighted television programming, WCVB will be deprived of existing and potential revenue streams from advertising and authorized retransmissions, both of which are critical to supporting free, over-the-air broadcast television.  Aereo's service unavoidably will negatively affect WCVB's efforts and resources devoted to the creation of valuable television programming — including the important local news, public safety, weather and emergency programming, public affairs, public service, and other public interest programming for the Boston community.

49.     If Aereo is permitted to profit from the unauthorized distribution and transmission of copyrighted television programming, it will encourage other infringers to do the same.  As a result, the competitive and economic harm facing WCVB would extend to other holders of television programming copyrights.

## COUNT ONE
## COPYRIGHT INFRINGEMENT—PUBLIC PERFORMANCE

50.     WCVB hereby incorporates by reference and realleges each and every allegation

of paragraphs 1 through 49 above.

51.     Each of the Television Programs, as well as WCVB's other locally-produced television programming, has been created or licensed for exhibition by WCVB.  WCVB is the legal or beneficial owner of the copyrights in the Television Programs and other WCVB programs, including *Chronicle*, *CityLine* and *On The Record*, each of which has been or will be exhibited on WCVB in the Boston television market.

52.     Under Section 106(4) of the Copyright Act, 17 U.S.C. § 106(4), WCVB possesses the exclusive right "to perform the copyrighted work publicly" and to authorize others to do so.

53.     Neither WCVB nor any person authorized by WCVB has granted any license, permission, or authorization to Aereo to publicly perform WCVB's audiovisual works, including the Television Programs, or to authorize others to do so.

54.     Aereo nevertheless has transmitted or will transmit WCVB's television broadcast programming, including, but not limited to, the Television Programs, over the public internet to Aereo's paying subscribers.

55.     When Aereo transmits the images and accompanying sounds of WCVB's broadcast television programming to Aereo's subscribers without WCVB's authorization or consent, Aereo "performs" WCVB's copyrighted audiovisual works publicly in violation of WCVB's exclusive rights under Section 106(4).

56.     Such a public performance of WCVB's audiovisual works constitutes infringement of WCVB's exclusive rights under copyright law in violation of Sections 106(4) and 501 of the Copyright Act, 17 U.S.C. §§ 106(4) and 501.

57.     Aereo is directly liable for these acts of infringement under the Copyright Act because Aereo causes and carries out the unauthorized public performance of WCVB's

audiovisual works.

58.     Aereo has committed and will commit each act of infringement of WCVB's exclusive right to perform the Television Programs and WCVB's other audiovisual works publicly with the knowledge that Aereo is not authorized to exercise the right of public performance as to any of the Television Programs or other works in which WCVB owns copyrights.  Aereo's acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to WCVB's rights.

59.     Unless restrained by this Court, Aereo's usurpation and misappropriation of WCVB's copyrighted programming threatens WCVB with substantial, irreparable harm that cannot be fully compensated by money damages.  Pursuant to 17 U.S.C. § 502, WCVB is entitled to an injunction prohibiting infringement of its copyrights and exclusive rights under copyright law.

## COUNT TWO
## COPYRIGHT INFRINGEMENT—REPRODUCTION

60.     WCVB hereby incorporates by reference and realleges each and every allegation of paragraphs 1 through 59 above.

61.     Under Section 106(1) of the Copyright Act, 17 U.S.C. § 106(1), WCVB owns the exclusive right to "reproduce the copyrighted work" and to authorize others to do so.

62.     Neither WCVB nor any person authorized by WCVB has granted any license, permission, or authorization to Aereo to reproduce WCVB's audiovisual works, including the Television Programs, or to authorize others to do so.

63.     Aereo nevertheless has reproduced or will reproduce WCVB's copyrighted audiovisual works, including, but not limited to, the Television Programs, including, without limitation, by making copies of WCVB's television broadcast programs and storing them on

Aereo's computer servers before retransmitting them over the internet to its subscribers. Upon information and belief, Aereo has represented that the copies created and saved by Aereo's system persist for a period of more than transitory duration.

64. When Aereo makes a copy of any of WCVB's programming, including the Television Programs, Aereo reproduces WCVB's copyrighted audiovisual works.

65. Such reproduction of WCVB's audiovisual works constitutes infringement of WCVB's exclusive rights under copyright law in violation of Sections 106(1) and 501 of the Copyright Act, 17 U.S.C. §§ 106(1) and 501.

66. Aereo is directly liable for these acts of infringement under the Copyright Act because Aereo causes and carries out the unauthorized reproduction of WCVB's audiovisual works.

67. Upon information and belief, Aereo relies on the fiction that its subscribers merely "rent" from Aereo an individual antenna and individual storage space on a hard drive, and thus it is the subscribers that are solely responsible for the copying and retransmission of Station WCVB's programming. To the extent that Aereo claims that its subscribers are responsible for making unauthorized copies of WCVB's copyrighted programming, WCVB alleges in the alternative that, when Aereo's subscribers reproduce WCVB's programming in connection with their use of the service provided by Aereo, Aereo is contributorily liable for each act of infringement of WCVB's exclusive reproduction rights under Sections 106(1) and 501 of the Copyright Act, 17 U.S.C. §§ 106(1) and 501.

68. Aereo purposefully and intentionally induces and encourages such infringement, and financially benefits from it. It does so by providing its unauthorized subscription-based retransmission service and by promoting use of that service to reproduce copies of WCVB's

copyrighted broadcast television programming.  Aereo maintains an ongoing relationship with its subscribers to provide that service.

69.    Aereo also stands in a position of control with respect to its subscribers and potential subscribers in that Aereo determines which television broadcast programming will be made available for selection and retransmission through its service.

70.    To the extent Aereo pleads that it is not a direct infringer, Aereo operates its service with the objective that its subscribers will infringe WCVB's copyrights directly by reproducing WCVB's programming in the ordinary operation of the Aereo service.  Copying copyrighted material is integral to Aereo's service, and the service that Aereo provides has no substantial non-infringing use.

71.    Aereo has committed and will commit each act of infringement of WCVB's exclusive right to reproduce the Television Programs and WCVB's other audiovisual works with the knowledge that Aereo is not authorized to exercise the right of reproduction as to any of the Television Programs or other works in which WCVB owns copyrights.  Aereo's acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to WCVB's rights.

72.    Unless restrained by this Court, Aereo's usurpation and misappropriation of WCVB's copyrighted programming threatens WCVB with substantial, irreparable harm that cannot be fully compensated by money damages.  Pursuant to 17 U.S.C. § 502, WCVB is entitled to an injunction prohibiting infringement of its copyrights and exclusive rights under copyright law.

**COUNT THREE**
**COPYRIGHT INFRINGEMENT—DISTRIBUTION**

73.    WCVB hereby incorporates by reference and realleges each and every allegation

of paragraphs 1 through 72 above.

74.     Under Section 106(3) of the Copyright Act, 17 U.S.C. § 106(3), WCVB owns the exclusive right to "distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending" and to authorize others to do so.

75.     Neither WCVB nor any person authorized by WCVB has granted any license, permission, or authorization to Aereo to distribute WCVB's audiovisual works, including the Television Programs, or to authorize others to do so.

76.     Yet, when Aereo retransmits WCVB's copyrighted audiovisual works, including, but not limited to, the Television Programs, to Aereo's subscribers via the internet without WCVB's authorization or consent, Aereo distributes and sells copies of WCVB's copyrighted audiovisual works.

77.     Such distribution and sale of WCVB's audiovisual works constitutes infringement of WCVB's exclusive rights under copyright law in violation of Sections 106(3) and 501 of the Copyright Act, 17 U.S.C. §§ 106(3) and 501.

78.     Aereo is directly liable for these acts of infringement under the Copyright Act because Aereo causes and carries out the unauthorized distribution and sale of WCVB's audiovisual works.

79.     Aereo has committed and will commit each act of infringement of WCVB's exclusive right to distribute the Television Programs and WCVB's other audiovisual works with the knowledge that Aereo is not authorized to exercise the right to distribute and sell any of the Television Programs and other works in which WCVB owns copyrights.   Aereo's acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to WCVB's rights.

80.     Unless restrained by this Court, Aereo's usurpation and misappropriation of WCVB's copyrighted programming threatens WCVB with substantial, irreparable harm that cannot be fully compensated by money damages.   Pursuant to 17 U.S.C. § 502, WCVB is entitled to an injunction prohibiting infringement of its copyrights and exclusive rights under copyright law.

### COUNT FOUR
### COPYRIGHT INFRINGEMENT—DERIVATIVE WORKS

81.     WCVB hereby incorporates by reference and realleges each and every allegation of paragraphs 1 through 80 above.

82.     Under Section 106(2) of the Copyright Act, 17 U.S.C. § 106(2), WCVB owns the exclusive right to "prepare derivative works based upon the copyrighted work" and to authorize others to do so.

83.     Neither WCVB nor any person authorized by WCVB has granted any license, permission, or authorization to Aereo to create derivative works based upon WCVB's audiovisual works, including the Television Programs, or to authorize others to do so.

84.     Aereo nevertheless creates a derivative work when it technologically alters each of WCVB's copyrighted audiovisual works, including, but not limited to, the Television Programs, from their original digital broadcast format into a different digital format that facilitates Aereo's retransmission of WCVB's copyrighted audiovisual works over the internet. Such technological alteration, including the "transcoding" of WCVB's audiovisual works, effectively creates a translation of the original work, much like the translation of a written work from one language to another.   Aereo's technical alteration process "translates" WCVB's programming from the digital language of an over-the-air broadcast service into a different digital language suitable for retransmission over the public internet and display or performance

on internet-enabled devices.   In addition, Aereo's technological alteration, including the compression of WCVB's audiovisual works, effectively creates an abridgement or other form of recasting or transformation of the original work because not every piece of the content included in the original work is included in the altered copy.   The technologically-altered programming is saved, or fixed, on Aereo's servers and then transmitted to the subscriber to watch, either "live" or at a later time.

85.      When Aereo technologically alters WCVB's copyrighted programming in order to enable the delivery of that programming to Aereo's subscribers via the public internet without WCVB's authorization or consent, Aereo creates derivative works based on WCVB's copyrighted audiovisual works.

86.      Such a creation of derivative works from WCVB's audiovisual works constitutes infringement of WCVB's exclusive rights under copyright law in violation of Sections 106(2) and 501 of the Copyright Act, 17 U.S.C. §§ 106(2) and 501.

87.      Aereo is directly liable for these acts of infringement under the Copyright Act because Aereo causes and carries out the unauthorized alteration and/or transformation of WCVB's audiovisual works.

88.      To the extent that Aereo claims that its subscribers are responsible for making derivative works of WCVB's copyrighted programming, WCVB alleges in the alternative that, when Aereo's subscribers prepare derivative works of WCVB's programming in connection with their use of the service provided by Aereo, Aereo is contributorily liable for each act of infringement of WCVB's exclusive rights to prepare derivative works under Sections 106(2) and 501 of the Copyright Act, 17 U.S.C. §§ 106(2) and 501.

89.      Aereo purposefully and intentionally induces and encourages such infringement,

and financially benefits therefrom.  It does so by providing its unauthorized subscription-based "pay-TV" transmission service and promoting use of its service to create derivative works based on WCVB's broadcast television programming.  Aereo maintains an ongoing relationship with its subscribers to provide this commercial service.

90.     To the extent Aereo pleads that it is not a direct infringer, Aereo operates its service with the objective that its subscribers will infringe WCVB's copyrights by preparing derivative works of WCVB's programming in the ordinary operation of the Aereo service. Preparing derivative works of copyrighted material is integral to Aereo's service, and the service that Aereo provides has no substantial non-infringing use.

91.     Aereo has committed and will commit each act of infringement of WCVB's exclusive right to create derivative works from the Television Programs and WCVB's other audiovisual works with the knowledge that Aereo is not authorized to exercise the right to create derivative works as to any of the Television Programs or other works in which WCVB owns copyrights.  Aereo's acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to WCVB's rights.

92.     Unless restrained by this Court, Aereo's usurpation and misappropriation of WCVB's copyrighted programming threatens WCVB with substantial, irreparable harm that cannot be fully compensated by money damages.  Pursuant to 17 U.S.C. § 502, WCVB is entitled to an injunction prohibiting infringement of its copyrights and exclusive rights under copyright law.

WHEREFORE, WCVB prays that this Court:

1.     Enter judgment in WCVB's favor and against Aereo on all Counts;

2.     Declare that Aereo has infringed WCVB's copyrights;

3.      Enter a preliminary and permanent injunction enjoining and restraining Aereo, and its successors, assigns, parent, subsidiaries, affiliates, officers, agents, servants and employees, and all persons in active concert or participation with them, from publicly performing, retransmitting, streaming, copying, distributing, making derivative works of, or otherwise displaying, directly or indirectly, over the internet (through websites such as www.aereo.com), via web applications, via portable devices, or by means of any device or process, any broadcast television programming work of television station WCVB-TV  in Boston, Massachusetts, or portions thereof, whether now in existence or later created, in which the plaintiff, Hearst Stations Inc. (or any parent, subsidiary or affiliate of the plaintiff) owns or controls, or in the future will own or control, an exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101, *et seq.*, without the consent of the plaintiff;

4.      Award WCVB's costs, including attorneys' fees, incurred in this matter as provided by law; and

5.      Award WCVB such other and further relief as the Court deems just and proper.

Respectfully submitted,

HEARST STATIONS INC., d/b/a
Television Station WCVB-TV

By its attorneys,

*/s/ James D. Smeallie*
James D. Smeallie (BBO #467380)
Joshua C. Krumholz (BBO #552573)
Brian G. Leary (BBO #548386)
Elizabeth M. Mitchell (BBO #638146)
Holland & Knight LLP
10 St. James Avenue
Dated:  July 9, 2013                    Boston, MA 02116