IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

HEARST STATIONS INC., d/b/a WCVB-TV,

        Plaintiff,

v.

AEREO, INC.,

        Defendant.

C.A. No. 1:13-cv-11649-NMG

**PLAINTIFF'S OPPOSITION TO DEFENDANT AEREO, INC.'S
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTS ..................................................................................................................... 3

      A.    WCVB........................................................................................................... 3

      B.    Aereo............................................................................................................. 4

      C.    Aereo's Technology and New York Launch Were All Part of Its
            Grand Plan to Make Outlier Second Circuit Law the Law of the Land ...................... 6

III.  ARGUMENT ............................................................................................................ 8

      A.    Plaintiff's Choice of Forum ............................................................................. 9

      B.    The Remaining Factors Weigh Heavily in Favor of Denying the
            Motion to Transfer ..................................................................................... 10

            1.    Boston is More Convenient for the Parties and Witnesses ................................ 10

            2.    The Location of Documents Favors Massachusetts........................................... 11

            3.    The Connection Between this Forum, the Public Interest,
                  and the Issues Is Strong......................................................................... 12

            4.    The Law to be Applied Must Come from the First Circuit................................. 13

      C.    Aereo's Judicial Economy Argument is Misplaced and Insufficient
            to Overcome the Presumption in Favor of WCVB's Choice of Venue ...................... 13

      D.    Aereo's Forum Shopping Should Not Be Countenanced by this Court ..................... 17

IV.   CONCLUSION......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*ABC, Inc. v. Aereo, Inc.*,
    874 F. Supp. 2d 373 (S.D.N.Y. 2012)........................................................................13

*Ashmore v. Northeast Petroleum Division of Cargill, Inc.*,
    925 F. Supp. 36 (D. Me. 1996) ................................................................................10

*Auto Europe, LLC v. Connecticut Indemnity Co.*,
    321 F.3d 60 (1st Cir. 2003)......................................................................................16

*Banjo Buddies, Inc. v. Renosky*,
    156 F. Supp. 2d 22 (D. Me. 2001) ...........................................................................15

*Blaski v. Hoffman*,
    260 F.2d 317 (7th Cir. 1958) ...................................................................................18

*Broadcast Music, Inc. v. Rockingham Venture*,
    909 F. Supp. 38 (D. N.H. 1995)...............................................................................20

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
    536 F.3d. 121 (2d Cir. 2008)............................................................................ passim

*CCM Pathfinder Pompano Bay, LLC v. Compass Financial Partners LLC*,
    396 B.R. 602 (S.D.N.Y. 2008)..................................................................................15

*Codex Corp. v. Milgo Electronic Corp.*,
    553 F.2d 735 (1st Cir. 1977)...............................................................................16, 19

*Continental Grain Co. v. The Barge FBL-585*,
    364 U.S. 19 (1960)...................................................................................................15

*DSM Research, B.V. v. Verenium Corp.*,
    686 F. Supp. 2d 159 (D. Mass. 2010) ...............................................................8, 9, 10

*Epstein v. Gray Television, Inc.*,
    No. 06-cv-431-WRF, 2007 WL 295632 (W.D. Tex. Jan. 5, 2007) .........................12

*Forum Financial Group v. President & Fellows of Harvard College*,
    173 F. Supp. 2d 72 (D. Me. 2001) ...........................................................................16

*Fox Broadcasting Co., Inc. v. Dish Network LLC*,
    __ F.3d __, 2013 WL 3814917 (9th Cir. 2013) .......................................................17

*Fox Television Stations, Inc. v. BarryDriller Content Systems, PLC*,
    915 F. Supp. 2d 1138 (C.D. Cal. 2012) .............................................................. passim

*Gastineau v. Gifford*,
  Nos. 11-11096-RWZ and 11-11312-RWZ, 2011 WL 4381501
  (D. Mass. Sep. 19, 2011)..........................................................................................15

*Gemini Investors, Inc. v. Ameripark, Inc.*,
  542 F. Supp. 2d 119 (D. Mass. 2008) ...............................................................10, 11, 12

*GTE Sylvania Inc. v. Consumer Product Safety Commission*,
  438 F. Supp. 208 (D. Del. 1977)..............................................................................14

*Hasbro, Inc. v. Clue Computing, Inc.*,
  994 F. Supp. 34 (D. Mass. 1997) ............................................................................11

*Heckendorn v. United States*,
  162 F. 141 (7th Cir. 1908) .....................................................................................17

*Henriquez v. Astrue*,
  482 F. Supp. 2d 50 (D. Mass. 2007) ........................................................................17

*In re Ramaekers*,
  33 F. Supp. 2d 312 (S.D.N.Y. 1999)........................................................................18

*J.J. Reidy & Co., Inc. v. Airwater Corp.*,
  No. 05-40049-FDS, 2005 WL 3728726 (D. Mass. Sept. 27, 2005) ........................................9

*Kettenbach v. Demoulas*,
  822 F. Supp. 43 (D. Mass. 1993) ..........................................................................9, 16

*Kleinerman v. Luxtron Corp.*,
  107 F. Supp. 2d 122 (D. Mass. 2000) ....................................................................8, 9, 16

*Lewis v. National Football League*,
  813 F. Supp. 1 (D.D.C. 1992)................................................................................18

*Motta v. Samuel Weiser, Inc.*,
  768 F.2d 481 (1st Cir. 1985)..................................................................................15

*Oracle Corp. v. epicRealm Licensing, L.P.*,
  Nos. 06-414-SLR and 06-495-SLR, 2007 WL 901543
  (D.C. Del. Mar. 26, 2007).....................................................................................14

*Penguin Group (USA), Inc. v. American Buddha*,
  640 F.3d 497 (2d Cir. 2011)...................................................................................12

*Tovar v. Indiana*,
  No. 2:12-CV-175-DBH, 2012 WL 3263948 (D. Me. Aug. 9, 2012).......................................15

*TPM Holdings, Inc. v. Intra-Gold Industries Inc.*,
　91 F.3d 1 (1st Cir. 2000) ........................................................................... 15

*Transcanada Power Marketing, Ltd. v. Narragansett Electric Co.*,
　402 F. Supp. 2d 343 (D. Mass. 2005) ........................................................ 12

*WNET v. Aereo, Inc.*,
　712 F.3d 676 (2d Cir. 2013) ................................................................ 7, 13

*Ziegler v. Dart Industries, Inc.*,
　383 F. Supp. 362 (D. Del. 1974) ............................................................... 18

## STATUTES

17 U.S.C. § 101 ............................................................................................ 20

17 U.S.C. § 106(4) ....................................................................................... 20

## OTHER AUTHORITIES

Brenner & Kay, ABC v. Aereo, Inc.:  *When Is Internet Distribution a "Public
　Performance" Under Copyright Law*, 11 Intell. Prop. & Tech. L.J. 12
　(Nov. 2012) ........................................................................................... 7, 19

H.R. REP NO. 94-1476 (1976) ..................................................................... 20

Ginsburg, Recent Developments in US Copyright Law — *Part II, Caselaw:
　Exclusive Rights on the Ebb*? 26 (Columbia Pub. Law & Legal Theory
　Working Papers 2008), *available at*
　http://lsr.nellco.org/cgi/viewcontent.cgi?article=1050&context=columbia_pllt ...................... 7

Ginsburgh, WNET v. Aereo:  *The Second Circuit Persists in Poor
　(Cable)Vision*, Media Inst. (Apr. 23, 2013), *available at*
　www.mediainstitute.org/IPI/2013/042313.php ................................... 7, 19

Goldstein, Goldstein on Copyright § 7.7.2 (3d ed. Supp. 2012) ..................... 7

Karjala, *"Copying" and "Piracy" in the Digital Age*, 52 Washburn L.J. 245 (2013) ................ 19

Malkan, *The Public Performance Problem in* Cartoon Network LP v. CSC
　Holdings, Inc., 89 Or. L. Rev. 505 (2010) ................................................... 7

Rasenberger & Pepe, *Copyright Enforcement and Online File Hosting
　Services: Have Courts Stuck the Proper Balance?*, 59 J. Copyright
　Soc'y U.S.A. 627 (2012) ...................................................................... 7, 19

## I.       INTRODUCTION

The defendant, Aereo, Inc. ("Aereo"), intercepts over-the-air broadcasts of television programming, converts those broadcasts to an internet-friendly format, and transmits and sells those programs to the general public in the greater Boston area for a fee.  The broadcasts it intercepts include programs created locally by the plaintiff, Hearst Stations Inc. d/b/a WCVB-TV ("WCVB").  WCVB provides over 43 hours a week of award-winning local broadcast programming.  Aereo does not pay or has not otherwise sought a license from WCVB for its commercial use of WCVB's programming, in clear violation of the Copyright Act.

As discussed herein, all factors typically considered weigh heavily in favor of keeping this action in Boston, where it belongs.  WCVB's station is located in Massachusetts.  As such, its choice of forum is entitled to substantial deference.  The copyrighted works at issue—namely, WCVB's award-winning news and other programming—are local in nature.  The key witnesses are located in the Boston area, including Aereo's own engineers, developers, CEO and CTO— the last two being the primary witnesses for Aereo in other litigation.  Its claims notwithstanding, Aereo is in fact a ***Boston-based company***, funded by a prominent Boston venture capital firm, with 55 to 60 employees in the Commonwealth—nearly four times the number Aereo employs in New York.  The programs that Aereo intercepts are in the Boston area—not New York—and the intended recipients of those programs are, under Aereo's own rules, all located in the Boston area—not New York.  In addition, the repeated, willful acts of copyright infringement that are the essence of this lawsuit are occurring in Boston—not New York.  Also, the harm to the public, *i.e.,* the potential loss of WCVB's Boston-based programming, is distinctly local in nature.  As such, ***all*** interests—the parties' and the general public's—are distinctly local to the Boston area.

Aereo cannot seriously dispute these facts.  It also does not seek to transfer due to convenience or judicial economy, as it claims.  Rather, Aereo's Motion to Transfer Venue

pursuant to 28 U.S.C. § 1404(a) (the "Motion to Transfer") (D. No. 20) comes down to one simple goal: forum shopping. Supported by media mogul and billionaire Barry Diller, Aereo set aside $3 million toward legal fees to cover anticipated lawsuits for its copyright violations. As part of its litigation strategy, Aereo decided to first launch its illicit business in New York—notwithstanding the fact that it is a Boston company—because it knew that potentially helpful precedent already existed in that circuit. That gambit has paid off so far. Over strenuous dissents and widespread criticism, the Second Circuit—constrained by prior precedent around which Aereo built its technology—felt compelled to rule in Aereo's favor.

Now, through its entirely improper and unsupportable Motion to Transfer, Aereo's goal is to make this outlier Second Circuit precedent the law of the land. Essentially, Aereo claims that, because that circuit already decided in its favor, it would be "prejudiced" if other courts came out differently. In effect, Aereo—a Boston company—wants its dispute with WCVB—a Boston television station—concerning Boston broadcast signals sent to Boston consumers to be governed by Second Circuit law. It pursues this strategy because it knows that no other circuit will follow New York's example—Aereo's copyright violations are simply too blatant. As the Central District of California already has concluded, in a case involving nearly identical issues, such conduct violates the Copyright Act. *See Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1143 (C.D. Cal. 2012) (hereinafter "*Fox*"). As Judge Chin stated in his dissent in New York, that conduct, and indeed Aereo's entire business model, puts the regime of free television at risk. *See* Decl. of Jessica Ragosta Early, filed simultaneously herewith ("Early Decl."), at Ex. 1 (Dissent of Judge Chin to Second Circuit denial of en banc review) at 3–7.

As described herein, the issues are local in nature. They involve Boston-based parties, Boston-based television programs, and the interests of the Boston-based public. Courts in the

First Circuit must weigh in on these issues, as courts in every other circuit have a similar right and obligation to do, should disputes arise there.  Aereo's motion must be denied.

## II.    FACTS

### A.    WCVB

WCVB's main studio is located at 5 TV Place, Needham, Massachusetts.  *See*  Decl. of Bill Fine ("Fine Decl.") (D. No. 5-2) at ¶ 4.  WCVB serves only the Boston designated market area ("Boston DMA"), which generally includes eastern Massachusetts, southeastern New Hampshire, and Windham County, Vermont.  *See id.*

Over the forty years of its existence, WCVB has become a leader in the Boston television market and has, on multiple occasions, received some of the industry's highest honors.  *See* Fine Decl. ¶ 9.  WCVB's valuable locally-produced programming, which is the *only* programming at issue in this case, includes shows such as *Chronicle*, a unique, locally-produced, weekday magazine show; *CityLine*, an award-winning urban news and feature weekly magazine; and *On The Record*, a weekly political roundtable featuring discussions with local Massachusetts newsmakers.  *See id.* at ¶ 8.  It also includes hours of daily local news, weather, emergency information, sports, entertainment, public affairs, educational and health and wellness programming.  *See id.* at ¶ 7.  Most recently, WCVB provided around-the-clock and virtually commercial-free news coverage in the wake of the Boston Marathon bombings.  *See id.*  In total, WCVB creates, produces, broadcasts and distributes over 43 hours per week of original, local programming.[1]  *See id.*  It is this original local programming that is at the heart of this action.

---

[1] Aereo's unsupported assertion that most (over 100 hours) of WCVB's programming is provided by ABC is completely beside the point.  WCVB produces and owns the copyrights to the only programming at issue in this case, which includes its news and other Boston-based programming.  In any event, Aereo's assertion simply is not true.  In addition to the 43 hours of weekly original, local programming produced and broadcast by WCVB, WCVB also pays for the right to transmit syndicated programming produced by others (not ABC).  *See* Fine Decl. ¶ 13.

**B.     Aereo**

Contrary to Aereo's unsupported claim to be a New York-based company, it actually

operates primarily out of Boston.  Aereo's CEO, Chaitanya Kanojia, has acknowledged that

Aereo is based primarily in Massachusetts, as well as New York.  *See* Early Decl., Ex. 2 (Excerpt

of Decl. of Chaitanya Kanojia, dated May 18, 2012) at ¶ 21.  On its registration and other filings

with the Secretary of the Commonwealth of Massachusetts (the "SOC"), Aereo lists only Boston

as the location of its "principal office."[2]  *See* Early Decl., Exs. 5 (Aereo's Registration with the

SOC, identifying 280 Summer Street, 4th Floor, Boston as its "principal office" and 155 Federal

Street, Suite 700, Boston as its "Massachusetts office") and 6 (Aereo's 2012 Annual Report filed

with the SOC, identifying "280 Summer Street, 4th Floor, Boston as "the corporation's principal

office").  Mr. Kanojia further acknowledged that Aereo's research and development facility is

located in Boston as well.  *See* Early Decl., Ex. 7 (Prelim. Inj. Hr'g Tr. (May 30–31, 2012) in

*ABC, Inc. v. Aereo, Inc.*, No. 1:12-cv-01540, and *WNET v. Aereo, Inc.*, No. 1:12-cv-01543,

S.D.N.Y. (the consolidated "New York Actions")) at 171:5–7.

Equally as important, the antenna farms Aereo uses to intercept WCVB's broadcast

signals are located in and around Boston.  *See* Early Decl., Ex. 8 (Aereo's Frequently Asked

Questions) at 1.  Further, Aereo's customer base for those signals must, by Aereo's own rules,

reside in the greater Boston area.  *See* Early Decl., Exs. 9 (Screenshot of Aereo's Boston

Coverage Area) and 10 (Aereo's Terms of Use) at ¶ 2.

Most of Aereo's employees also reside in the Boston area, including its engineers and

developers.  *See* Early Decl., Exs. 11 (Aereo's Blog, *Hello, Boston!*, dated May 15, 2013) and 12

(*www.marketwire.com, Aereo Sets Launch Date for Boston*, dated Apr. 23, 2013) (quoting

---

[2] Indeed, Aereo's principal office is only .5 miles (within walking distance) from this Court.  *See* Early Decl., Ex. 3 (Google.com directions).  Aereo's counsel's office in both this and the New York litigation is even closer to this Court; it is right next door.  *See* Early Decl., Ex. 4 (Google.com directions).

Mr. Kanojia as explaining that 60 Aereo employees reside in Boston).  In fact, at a recent hearing in New York, Aereo attempted to avoid testing at its New York antenna farm by arguing that it would be too burdensome on Aereo because the engineer in charge of the facility would have to travel from Boston to New York to attend.  *See* Early Decl., Ex. 13 (Hr'g Tr. 47:8–13, Jun. 4, 2013, in New York Actions).  In total, Aereo has nearly four times as many employees in Boston than it does in New York.  *See* Early Decl., Ex. 14 (Alspach, *Aereo to Deliver Live TV Over the Web to Boston*, Boston Business Journal (Mar. 22, 2013)) at 2 (Aereo's Boston office employs 55 people, with plans to add 30 more, while its New York office has only 15 employees with plans to add only 15 more).  This includes Mr. Kanojia himself, who resides in West Newton, Massachusetts.  *See* Early Decl., Exs. 15 (Aereo's Patent Application), 16 (switchboard.com printout for Mr. Kanojia), and 12.  Aereo's CTO, Joseph Lipowski, also is based out of the Boston area.  *See* Early Decl., Exs. 14, 15 and 17 (screenshot of Mr. Lipowski's LinkedIn profile).  Mr. Kanojia and Mr. Lipowski were the only Aereo lay witnesses to testify at the New York preliminary injunction hearing and are referenced repeatedly as key witnesses in Aereo's Motion to Transfer.  *See* Early Decl., Ex. 7 at 263, 508; Def. Aereo, Inc.'s Mem. of Law in Supp. of its Mot. to Transfer ("Transfer Mem.") (D. No. 21) at 2 n.5, 5, and 6.[3]

In addition, Aereo is not the small, thinly-funded start-up it claims to be.  *See* Transfer Mem. at 1, 3, 11, 17.  Aereo is backed by media mogul and billionaire Barry Diller through his web company conglomerate IAC/InterActiveCorp.  *See* Early Decl., Exs. 19 (Carr, *Spreading Distruption, Shaking up Cable TV*, The New York Times, Mar. 17, 2013) at 1, and 20 (Forbes.com profile for Barry Diller) (showing his net worth at $1.9 billion).  Mr. Diller is listed as one of Aereo's directors.  *See* Early Decl., Ex. 5.  Another major Aereo backer is Highland

---

[3] Although they should not be needed to resolve WCVB's Motion for Preliminary Injunction, Aereo's experts in the New York Actions also reside in Massachusetts.  *See* Early Decl., Exs. 7 at 277:6–7, and 18 (CV of David Pozar).

Capital Partners ("Highland"), a venture capital firm based out of Cambridge, Massachusetts. *See* Early Decl., Exs. 21 (Aereo Press Release, *Aereo Announces Expansion Plains for 22 New U.S. Cities*, dated Jan. 8, 2013) and 22 (SOC entries for Highland).  As of January 2013, Aereo already had raised $63 million in capital, most of which has come from IAC and Highland.  *See* Early Decl., Exs. 14, 21, and 7 at 160:17–161:15.  At least three million dollars of that money has been earmarked for legal fees.  *See* Early Decl., Ex. 7 at 175:8–176:20, 196:20–22.

### C.   Aereo's Technology and New York Launch Were All Part of Its Grand Plan to Make Outlier Second Circuit Law the Law of the Land

Despite being a Boston-based company, Aereo decided to first launch its business in New York.  *See* Early Decl., Ex. 7 at 145:2–18.  When asked why, Mr. Kanojia expressly cited the Second Circuit decision in *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d. 121 (2d Cir. 2008) ("*Cablevision*") as one of the reasons.[4]  *See id*.  In that case, television content providers sought to enjoin technology that allowed customers to record Cablevision's transmissions and play them back later.  *See* Early Decl., Ex. 1 at 13.  The content providers argued in that case that Cablevision needed additional licenses because it was allowing a later transmission of their copyrighted content to the public without permission.  *See id.*

The Second Circuit rejected that argument under, at times, strained reasoning.  It concluded that the retransmissions were not made available to the public because each transmission was made to a "single subscriber using a single unique copy produced by that subscriber."  *See id.* at 13–14 (quoting *Cablevision*, 536 F.3d at 139).  Thus, the court focused, improperly, on the individual transmissions themselves, rather than the fact that the copyrighted performances (*i.e.*, the television shows) were made available to the public as a whole.

---

[4] Tellingly, even though the New York designated market area includes northern New Jersey, Aereo offered its services only to residents of New York.  *See* Early Decl., Ex. 23 (Excerpt of Kanojia Dep., Apr. 23, 2012) at 230:17–231:13.  Offering its services to residents of New Jersey, of course, would have opened Aereo up to possible lawsuits in the Third Circuit, which is not bound by *Cablevision*.

As Judge Chin has noted, *Cablevision*'s interpretation of the public performance prong of the Copyright Act has been the subject of much academic criticism.  *See id*. at 14 n.13.[5]  Indeed, as Judge Chin explained, "[e]ven the United States, in its amicus brief opposing the grant of certiorari in *Cablevision*, argued that this 'single copy' portion of the *Cablevision* decision 'could be read to endorse overly broad, and incorrect, propositions about the Copyright Act.'"  *See id*. at 14–15 (quoting Br. for the United States as Amicus Curiae at 6, *Cablevision*, 129 S. Ct. 2890 (1009) (No. 08-448), 2009 WL 1511740).

Despite the dubious nature of the holding and its applicability only to the Second Circuit, Aereo designed its technology in a Rube Goldberg-like manner to fall carefully within this *Cablevision* exception.  Aereo has set up thousands of individual antennas that allegedly transmit only a single transmission to a single user.  *See id*. at 1.  From a technical standpoint, this approach makes no sense.  Rather, as Aereo has conceded, its antenna farms were designed solely to fit within the reasoning of *Cablevision*.  *See* Early Decl., Ex. 24 (Hr'g Tr. Nov. 30, 2012, in the New York Actions) at 53:23–55:7.

Aereo's strategy has worked so far, at least with the Second Circuit.  Over two dissents,[6] the trial court and Second Circuit panel both felt compelled to follow *Cablevision*'s precedent,

---

[5] *See*, *e.g.*, Goldstein, Goldstein on Copyright § 7.7.2, at 7:168 (3d ed. Supp. 2012); Brenner & Kay, ABC v. Aereo, Inc.: *When Is Internet Distribution a "Public Performance" Under Copyright Law*, 11 Intell. Prop. & Tech. L.J., 12, 15 (Nov. 2012); Ginsburg, Recent Developments in US Copyright Law — *Part II, Caselaw: Exclusive Rights on the Ebb*? 26 (Columbia Pub. Law & Legal Theory Working Papers 2008), *available at* http://lsr.nellco.org/cgi/viewcontent.cgi?article=1050&context=columbia_pllt; Ginsburgh, WNET v. Aereo: *The Second Circuit Persists in Poor (Cable)Vision*, Media Inst. (Apr. 23, 2013), *available at* www.mediainstitute.org/IPI/2013/042313.php; Malkan, *The Public Performance Problem in* Cartoon Network LP v. CSC Holdings, Inc., 89 Or. L. Rev. 505, 532 (2010); Rasenberger & Pepe, *Copyright Enforcement and Online File Hosting Services: Have Courts Stuck the Proper Balance?*, 59 J. Copyright Soc'y U.S.A. 627, 693 (2012).

[6] *See WNET v. Aereo, Inc.*, 712 F.3d 676, 697 (2d Cir. 2013) (Chin, J. dissenting) (explaining that Aereo's "technological platform" is "a sham" and that "[b]y accepting Aereo's argument that it may do so [*i.e.*, transmit copyrighted programming] without authorization and without paying a fee, the majority elevates form over substance.  Its decision, in my view, conflicts with the text of the Copyright Act, its legislative history, and our case law."); Early Decl., Ex. 1 at 7 ("Here, the majority's decision conflicts with our precedent, as this Court has repeatedly acknowledged that activity similar to Aereo's constitutes copyright infringement."); *id.* at 28 ("By extending *Cablevision*, the panel decision eviscerates the Copyright Act.").

denying (and then upholding the denial of) a motion to enjoin Aereo's illegal conduct.  In

contrast, the Central District of California, considering whether similar technology violated

copyright holders' exclusive rights to publicly perform their works, and unconstrained by

*Cablevision*, made short work of the same argument Aereo advanced in the Second Circuit.  *See*

*Fox*, 925 F. Supp. 2d at 1143 (rejecting the Second Circuit approach).  The remaining circuits,

including the First Circuit, have not yet spoken on the subject.

Knowing that it cannot win without the constraints of the *Cablevision* decision, Aereo

seeks to execute a strategy whereby the citizens of all circuits are bound by the Second Circuit's

decision.  The Motion to Transfer is a manifestation of that strategy and must be denied.

## III.   ARGUMENT

The decision whether to transfer this case under Section 1404(a) is within this Court's

sound discretion "according to an individualized case-by-case consideration of convenience and

fairness."  *See DSM Research, B.V. v. Verenium Corp.*, 686 F. Supp. 2d 159, 160 (D. Mass.

2010) (Gorton, J.) (quoting from *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st

Cir. 2009)).  "A number of factors have developed to measure the convenience of litigating in a

particular court including 1) the plaintiff's choice of forum, 2) the convenience of the parties,

3) the convenience of the witnesses and location of documents, 4) any connection between the

forum and the issues, 5) the law to be applied and 6) the state or public interest at stake."

*Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 125 (D. Mass. 2000) (Gorton, J.).

Based on each of these factors, the Court should deny Aereo's Motion to Transfer.  First,

WCVB's choice of forum is entitled to substantial deference.  Second, the convenience of the

parties and witnesses is greater in Boston than New York, and the key documents are located

here.  Third, this action directly impacts not only WCVB and Aereo, two Boston-based

companies, but also the citizens of the Commonwealth.  As such, there is an intimate connection

between this forum and the issues, with demonstrably local public issues at stake.  For all of these reasons, the law to be applied must come from *this* Circuit, not the Second Circuit.

In contrast, Aereo has not come close to satisfying its burden.  It relies almost exclusively upon exaggerated claims of judicial economy.  However, judicial economy will not be served by transferring this case to New York, where allegedly related cases are significantly advanced, nor is it appropriate to transfer based on judicial economy when WCVB is not a party to the other pending actions.  Regardless, judicial economy alone is not sufficient to overcome WCVB's choice of forum and the other factors described herein.

## A.       Plaintiff's Choice of Forum

This Court has recognized that "[a] plaintiff's choice of forum weighs strongly against transfer."  *DSM Research*, 686 F. Supp. 2d at 161.  "The party seeking to demonstrate that one forum is more convenient than another . . . must show that the plaintiff's choice of forum is *substantially more inconvenient* than the alternative proposed by it."  *Kleinerman*, 107 F. Supp. at 125 (emphasis added).  "As the First Circuit has recognized, '[t]he plaintiff's choice of forum *should rarely be disturbed*'; thus, 'the moving defendant . . . must establish that the private and public interests weigh heavily on the side of trial in the foreign forum.'"  *J.J. Reidy & Co., Inc. v. Airwater Corp.*, No. 05-40049-FDS, 2005 WL 3728726, at *9 (D. Mass. Sept. 27, 2005) (quoting *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991)) (emphasis added).

WCVB's choice of forum is entitled to substantial deference.  As a Massachusetts-based television station, broadcasting local Boston news and programming, it is a home-town plaintiff for purposes of this analysis.  As such, there is a strong presumption in favor of WCVB's choice of forum.  *See Kettenbach v. Demoulas*, 822 F. Supp. 43, 44 (D. Mass. 1993).

Aereo tries to avoid this strong presumption by pointing to the New York connections of WCVB's legal owner, Hearst Stations Inc.  But this argument fails as a matter of fact and law.

This case entirely concerns WCVB's local activities—its local television programming created in Massachusetts that is being intercepted by antenna farms located in or around Boston and illegally transmitted to Boston consumers.  Even when faced with plaintiffs with far more tenuous connections to their chosen district, courts in this Circuit have given substantial deference to the plaintiffs' choices.  *See DSM Research*, 686 F. Supp. 2d at 161 (denying transfer because, although non-resident plaintiff's choice of forum was entitled to slightly less deference, Court nevertheless found it counseled strongly against transfer where case had some connection to the District); *Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*, 925 F. Supp. 36, 39 (D. Me. 1996) (holding that "First Circuit's clear directive [is] that [plaintiff's] choice [of forum] should be given 'substantial deference' regardless of whether plaintiff resides in the forum").

### B.       The Remaining Factors Weigh Heavily in Favor of Denying the Motion to Transfer

#### 1.       Boston is More Convenient for the Parties and Witnesses

While Aereo includes the convenience of witnesses among its grounds for transfer, Aereo has not come close to meeting its burden on this issue.  *See Gemini Investors, Inc. v. Ameripark, Inc.*, 542 F. Supp. 2d 119, 126 (D. Mass. 2008) (citations and internal quotation marks omitted) (denying motion to transfer in part because defendant specified only two witnesses and failed to provide general statement of their testimony, which was "woefully inadequate").  For this factor:

> [a] Court must consider the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify.  A party seeking transfer on this basis must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail.

*See id.*  Aereo does none of that.

Instead, Aereo avoids identifying the precise witnesses to be involved or their locations, *see, e.g.,* Transfer Mem. at 5, 7, 18–19, presumably because its two main witnesses, and most of its other employees, are located in the Boston area, *see supra* § II.B.  Likewise, WCVB's

President and General Manager, Bill Fine, is located in the Boston area and would testify to

WCVB's original Boston area programming and the harm caused by Aereo.  *See generally* Fine

Decl.  As such, Boston is more convenient for most, possibly even all, anticipated witnesses.

Aereo also identifies three non-party companies from which it claims potential witnesses

may come.  *See* Transfer Mem. at 19.  Aereo, however, fails to identify the subject matter of

their testimony.  Moreover, the only subject referenced at all by Aereo, that such companies "are

developing and implementing new methods and industry standards for tracking viewership

across all platforms," *see id.*, is not relevant to the central issue of the case—whether Aereo is

violating WCVB's rights by selling WCVB's copyrighted programming without its permission.[7]

### 2.      The Location of Documents Favors Massachusetts

The location of documents is not a major factor in today's digital world.  *See Gemini*

*Investors*, 542 F. Supp. 2d at 126 ("This factor is insignificant when the documents are mobile.

This is because most records and documents can be transported easily or exist in miniaturized or

electronic form.") (citations and internal quotation marks omitted).  Nevertheless, Aereo

apparently bases its argument regarding this factor on the fact that "Aereo has already gathered

and produced its relevant documents" in New York.  *See* Transfer Mem. at 19.  Notably, Aereo

does not go so far as to allege that the bulk of the documents relevant to this action are ***located*** in

New York.  This omission is not surprising, as WCVB's studios are located in Massachusetts,

Aereo's research and development facility and principal office are located in Boston, and

Aereo's antenna farms that are illegally intercepting WCVB's programming are located in or

around Boston.  *See supra* §§ II.A & B.  Further, Aereo has failed to explain why the documents

---

[7] Aereo also ignores the fact that Nielsen has employees all over the world, including Boston, and ComScore is a
Virginia-based company registered to do business in Massachusetts.  *See* Early Decl., Exs. 25 (Nielsen Job Postings)
and 26 (ComScore Registration with the SOC); *see also Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34, 46–
47 (D. Mass. 1997) (holding that existence of one witness in proposed transferee forum was not sufficient to
overcome defendants' burden of making strong showing that their choice of forum was superior).

it produced in the New York Actions could not be easily reproduced digitally in Boston.  *See*

*Gemini Investors*, 542 F. Supp. 2d at 126 (denying motion to transfer in part because defendant

failed to explain why it could not transport documents easily from Georgia to Massachusetts).[8]

### 3.     The Connection Between this Forum, the Public Interest, and the Issues Is Strong

The issues in this case have a strong connection with this forum and Massachusetts's

citizens.[9]  As explained above, the *only* programming at issue in this lawsuit is WCVB's original

local programming.  This programming:  (1) is created by WCVB in Massachusetts, largely at

WCVB's Needham studio; (2) focuses specifically on local issues; and (3) broadcasts primarily

to the greater Boston area.  In addition, Aereo is intercepting WCVB's programming using

antenna farms located in or around Boston, and advertising, transmitting and selling that

programming to the public residing in the Boston DMA.  A dispute does not get more local.

As a result of this local connection, there is a corresponding local interest in having the

case tried here.  *See Transcanada Power Mktg., Ltd. v. Narragansett Electric Co.*, 402 F. Supp.

2d 343, 353 (D. Mass. 2005) ("There is a local interest in having localized controversies decided

at home.") (citation omitted).  Indeed, for the reasons explained by WCVB in support of its

Motion for Preliminary Injunction (D. Nos. 4 & 5), if Aereo is permitted to sell WCVB's

programming without WCVB's permission, Aereo's business would jeopardize WCVB's ability

to continue providing its vital local programs.  The Boston public has a direct interest in

continued access to this important programming.  *See Epstein v. Gray Television, Inc.*, No. 06-

---

[8] In addition, with the antenna farms located in or around Boston, it would be far more convenient for this Court to conduct a site visit, if necessary, than for the Southern District of New York.

[9] Aereo wrongly cites *Penguin Group (USA), Inc. v. Am. Buddha*, 640 F.3d 497, 500–501 (2d Cir. 2011), for the proposition that the site of WCVB's harm is in New York because that is where Hearst Stations Inc. has its principal place of business.  *See* Transfer Mem. at 10–11.  *Penguin Group* stands only for the limited proposition that, under the New York Long Arm Statute, a requirement that an out-of-state defendant cause an in-state injury is satisfied if an out-of-state internet-based defendant infringes copyrights belonging to a New York resident.

cv-431-WRF, 2007 WL 295632, at *7 (W.D. Tex. Jan. 5, 2007) (recognizing local interest in local television station).

### 4.    The Law to be Applied Must Come from the First Circuit

While this factor generally does not weigh heavily in cases involving federal law, as explained in the next section, in this case, it is critical that this Court reject Aereo's efforts to forum shop and independently consider the legal issues based on First Circuit precedent.

### C.    Aereo's Judicial Economy Argument is Misplaced and Insufficient to Overcome the Presumption in Favor of WCVB's Choice of Venue

This case is a straightforward one that does not require analysis of Aereo's technology.[10] The only reason that the New York Actions have involved such extensive discovery about Aereo's technology is because those courts felt constrained by unique Second Circuit precedent, *i.e., Cablevision*, which they believed made the details of Aereo's technology relevant. *See ABC, Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 385–94 (S.D.N.Y. 2012) (conducting in-depth analysis of Aereo's technology pursuant to *Cablevision*).   However, this Court, indeed the rest of the country, is not bound by that precedent.   As Judge Wu in the Central District of California and Judge Chin in the Second Circuit have concluded, even if Aereo's description of its technology is accurate, it still infringes upon, at a minimum, WCVB's exclusive right to publicly perform its works. *See Fox*, 915 F. Supp. 2d at 1143; *WNET*, 712 F. Supp. 2d at 698 (Chin, J. Dissenting).

---

[10] This case similarly is not about Aereo's subscribers' actions, as Aereo suggests. *See* Transfer Mem. at 4.  Aereo attempts to deflect attention from the fact that it is profiting from WCVB's copyrighted programming by focusing on what Aereo's subscribers could do if they purchased equipment and set it up themselves at home. *See id*.  While, in fact, Aereo's commercial monthly subscription service offers much more than that which its subscribers could achieve at home, *see* Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. (D. No. 5) at 12 n.11, potential subscribers' rights are not relevant.  What matters is *Aereo's* actions.  Aereo is engaged in a commercial enterprise that involves transmitting, copying, distributing, and creating derivative works of WCVB's copyrighted programming for a fee without WCVB's permission.  As explained in WCVB's preliminary injunction papers, the analysis ends there.

Thus, for this litigation, such extensive discovery is not necessary.[11]  As such, combining

discovery efforts with the New York Actions provides no efficiencies.

In addition, based on the current procedural posture of the actions pending there,

transferring WCVB's action to the Southern District of New York would not promote judicial

economy.  In the consolidated New York Actions, discovery is nearly complete, fully-briefed

summary judgment motions are pending, and, if necessary, trial is to proceed in early 2014.  The

2013 action brought by Aereo (the "Aereo Action")[12] only addresses the extent to which one

party to the New York Actions, CBS, and its affiliates in other cities outside New York, are

bound by the decision in the New York Actions.  *See* Early Decl., Ex. 27 (Compl. for

Declaratory J., Aereo Action).  A fully-briefed motion to dismiss Aereo's declaratory judgment

complaint is pending.  Judicial economy would not be served by transferring this case to New

York for the purposes of consolidating it with any of these far more advanced cases.  *See Oracle

Corp. v. epicRealm Licensing, L.P.*, Nos. 06-414-SLR and 06-495-SLR, 2007 WL 901543, at *5

(D.C. Del. Mar. 26, 2007) (because related litigation in transferee district was near completion,

transfer would not serve judicial economy).

Moreover, introducing this case into the New York Actions now would likely cause delay

and disruption to those cases.  Even Aereo recognizes that, if a transfer is granted, WCVB would

be entitled to conduct additional discovery, as would be necessary under that Court's *Cablevision*

---

[11] Should this Court disagree, WCVB reserves its right to request discovery regarding Aereo's technology.  When discovery commences, WCVB is willing to work cooperatively with Aereo to reasonably avoid any unnecessary duplication of discovery that already has occurred in the New York Actions.  *See also GTE Sylvania Inc. v. Consumer Prod. Safety Comm'n*, 438 F. Supp. 208, 213 (D. Del. 1977) (duplicative discovery could be avoided by stipulations and by coordinating any remaining discovery).  Any discovery, however, would need to include Aereo's Boston antenna farms, as it remains unclear whether Aereo's technology is the same for every channel in every city.  *See* Early Decl., Ex. 13 at 30:19–31:2 (discussing special antenna used for ION channel).

[12] *Aereo, Inc. v. CBS Broad., Inc.*, No. 1:13-cv-03013, S.D.N.Y.

precedent.[13]  *See* Transfer Mem. at 3.  Yet, Aereo acts as though WCVB would be able to get up

to speed on the extensive discovery that already has occurred in New York, determine what

additional discovery is necessary, conduct that discovery, respond to Aereo's discovery requests,

and retain experts who will, in turn, need to get up to speed on the case, issue expert reports, and

undergo depositions, all within, at best, a month and a half.  That is not possible.  In order to

provide WCVB with sufficient time to conduct meaningful discovery, the New York court would

need to extend the litigation deadlines, which could ultimately delay trial.  Transfer is

inappropriate under these circumstances.  *See Banjo Buddies, Inc. v. Renosky*, 156 F. Supp. 2d

22, 26 n.5 (D. Me. 2001) (court may consider likelihood that transfer of newer action in need of

additional discovery might delay more advanced action pending in transferee forum).

Further, unlike the cases cited by Aereo in support of its judicial economy argument

(with one unusual exception), *see* Transfer Mem. at 13–16,[14] the plaintiff in this case is not a

party to the actions pending in the proposed transferee venue.  Despite Aereo's attempts to

conflate WCVB with the plaintiffs in the New York Actions and the defendants in the 2013

Aereo Action, WCVB is not related to them.  WCVB is a completely separate legal entity from

ABC.  ABC's involvement in the New York Actions is thus irrelevant to this case.  Indeed,

WCVB had no standing to be involved in the New York Actions.[15]  *See Motta v. Samuel Weiser,*

---

[13] In this respect, transfer would necessitate more time and resources, not less, as the Second Circuit precedent
would require more extensive discovery regarding the details of Aereo's technology than is otherwise necessary.

[14] *Continental Grain Co. v. The Barge FBL-585*, 364 U.S. 19 (1960), *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*,
91 F.3d 1, 4 (1st Cir. 2000), and *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602,
608 (S.D.N.Y. 2008) all involved plaintiffs who were parties to the action(s) pending in the transferee district and
*Gastineau v. Gifford*, Nos. 11-11096-RWZ and 11-11312-RWZ, 2011 WL 4381501 (D. Mass. Sep. 19, 2011)
involved three shareholder derivative suits brought on behalf of the same company and shareholders.  The only
exception is *Tovar v. Indiana*, No. 2:12-CV-175-DBH, 2012 WL 3263948 (D. Me. Aug. 9, 2012).  But that case was
unusual in that the plaintiff was not from either forum and had originally attempted to bring the suit in the transferee
forum.  Also, in *Tovar*, all other factors beyond judicial economy were neutral.

[15] WCVB had no legal basis to be involved in the New York Actions because it does not own copyrights in any
television programming broadcast in New York.  *See* Fine Decl. ¶¶ 4, 6.  Aereo's allegations that WCVB is trying to

15

*Inc.*, 768 F.2d 481 (1st Cir. 1985) (to have standing to assert copyright infringement, party must have ownership interest in copyright being infringed).  Thus, the authority cited by Aereo is simply inapplicable.  *See, e.g., Kettenbach*, 822 F. Supp. at 46 (distinguishing case cited by defendant in support of transfer for judicial economy because it involved related pending action between *same parties*, whereas in *Kettenbach*, plaintiff was not party to other pending action); *Forum Fin. Group v. President & Fellows of Harvard Coll.*, 173 F. Supp. 2d 72, 93 (D. Me. 2001) (denying transfer in part because plaintiff was not party to other pending litigation).

Finally, Aereo's reliance almost exclusively on its judicial economy argument is not sufficient to overcome the presumption in favor of WCVB's choice of venue.  "The pendency of related litigation in another forum is a proper factor to be considered in resolving choice of venue questions . . . and may have been decisive in a number of cases where the convenience of the parties factors were inconclusive . . . .  However, we have found no case where it has carried the day against factors pointing in the other direction."  *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 739 (1st Cir. 1977).  In *Kleinerman*, for example, the defendant sought to transfer the case to another jurisdiction where a second case was pending between the same parties and involved the same issues.  While this Court recognized that it would be more convenient to try both of those cases in a single action, it concluded that, "[n]evertheless, [the plaintiff] as the patentee appears to be determined to proceed against [the defendant] in this district.  Because the plaintiff's choice of forum is entitled to substantial weight, the Court concludes that judicial economy in this case is not paramount and does not eclipse that choice."  *See Kleinerman*, 107 F. Supp. 2d at 126 (Gorton, J.).  *See also Auto Europe, LLC v. Conn. Indem. Co.*, 321 F.3d 60, 64

---

win a war of attrition are thus ironic.  *See* Transfer Mem. at 3, 17.  WCVB's "war of attrition" began when Aereo came ***to it***, stealing ***its*** signals.

(1st Cir. 2003) (affirming district court's refusal to transfer Maine action to Illinois even though Maine plaintiff was defendant in two related Illinois actions).

### D.     Aereo's Forum Shopping Should Not Be Countenanced by this Court

Aereo claims that WCVB will suffer no prejudice if transfer is granted.  Aereo, however, knows that Second Circuit law, *i.e., Cablevision* and now *WNET*, would be applied by that Court.  Indeed, this is exactly what Aereo wants; it is why Aereo launched its business in New York in the first instance, and why it is fighting so hard to keep all lawsuits against it confined to courts in the Second Circuit.  Aereo wants to make outlier Second Circuit precedent the law of the land because it believes that, if any other court in the country considers the legal issues without the cloud of *Cablevision*, Aereo will be forced to cease its infringing business activity in that circuit.  In fact, the Central District of California already has explicitly rejected Second Circuit law in litigation against Aereo's competitor, concluding that services like Aereo's violate the public performance clause of the Copyright Act.  *See Fox*, 915 F. Supp. 2d at 1143.[16]

WCVB and the Commonwealth's citizens are entitled to this Court's independent consideration and judgment of WCVB's claims.  *See Heckendorn v. United States*, 162 F. 141, 142–42 (7th Cir. 1908) (indicating that parties are "entitled to [the presiding court's] independent consideration and judgment" even where case law exists in other circuits).  And "this Court is not bound by the holding of another circuit."  *Henriquez v. Astrue*, 482 F. Supp. 2d 50, 60 (D. Mass. 2007).  Instead, each district has:

---

[16] In *Fox Broad. Co., Inc. v. Dish Network LLC*, the Ninth Circuit recently affirmed the denial of a preliminary injunction of recording technology similar to that involved in *Cablevision*.  *See Fox Broad. Co., Inc. v. Dish Network LLC*, __ F.3d __, 2013 WL 3814917, at * 1–2 (9th Cir. 2013).  In that case, however, only the reproduction clause of the Copyright Act was at issue.  *See id.* at * 4.  While the court declined to disturb the district court's ruling, the Ninth Circuit's analysis suggests that Aereo's actions in copying and contributing to copying of WCVB's programming directly violate the Copyright Act.  *See id.* at * 4–7.  Also, the court did not address *Cablevision's* analysis of the public performance clause of the Copyright Act, which was the only clause at issue in the split decisions of the Central District of California and the Second Circuit over services such as Aereo's.

a responsibility to engage independently in reasoned analysis. Binding precedent for the district courts within a circuit is established by the Supreme Court and by the court of appeals for the circuit in which the district court sits. There is no room in the federal system of review for rote acceptance of the decision of a court outside the chain of direct review. If a federal court simply accepts the interpretation of another circuit without independently addressing the merits, it is not doing its job.

*In re Ramaekers*, 33 F. Supp. 2d 312, 315 (S.D.N.Y. 1999) (quotation and internal quotation marks mitted); *see also Blaski v. Hoffman*, 260 F.2d 317, 321 (7th Cir. 1958) ("[W]e are under no more obligation to follow [the Fifth Circuit] as the law of the case than that Circuit would be to follow what it considers an erroneous decision by this Court.").

The Central District of California followed this mandate. It reviewed the same issues based upon Ninth Circuit precedent, and ultimately rejected the Second Circuit's reasoning:

Assuming that Defendants accurately describe their technology—which Plaintiffs dispute—Second Circuit law would support Defendants' position, because cases there have held that where a transmission of a work over the internet is made from a copy of a work made at the direction of and solely for use by [a] single user, there is no public transmission. But, that Second Circuit law has not been adopted in the Ninth Circuit, and this Court . . . find[s] that the Ninth Circuit's precedents do not support adopting the Second Circuit's position on this issue.

*Fox, Inc*., 915 F. Supp. 2d at 1143. Consistent with principles of comity, that Court also made clear that its injunction did not extend beyond the borders of the Ninth Circuit. *See id.* *7. In so doing, the Court understood that each circuit had to decide the issue for itself.

If the Court grants Aereo's Motion to Transfer, in essence it will be deferring to the Second Circuit's interpretation of this federal question, thereby avoiding its responsibility to independently determine the issues through its own reasoned analysis. Where the Second Circuit's precedent is an inapplicable outlier, and where a circuit split already exists, this Court is under a particular obligation to conduct its own analysis. *See Ziegler v. Dart Indus., Inc.*, 383 F. Supp. 362, 365 (D. Del. 1974) (movant was not entitled to transfer for purpose of precluding circuit split); *Lewis v. Nat'l Football League*, 813 F. Supp. 1, 6 (D.D.C. 1992) (denying transfer

even though related cases were pending because conflicting decisions already existed, so

creating a circuit split was not an issue). *See also Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d

735, 738 (1st Cir. 1977) (recognizing importance of venue rights in patent actions, where it is

viewed that "the hospitality accorded patents varies markedly from circuit to circuit").

A fresh look by this Court is all the more appropriate where the criticism associated with

the Second Circuit's decisions has been so acute.  Some come from within, where Judge Chin of

the Second Circuit has observed that, under Aereo's theory, it can "stream the Super bowl 'live'

to 50,000 subscribers, and yet" absurdly claim that the streaming is a "private" performance not

covered by the Copyright Act.  *See* Early Decl., Ex. 1 at 1.  Such illogical reasoning, Judge Chin

explains, puts the entire free television market at risk.  *See id.* at 3–7.

The New York decision has been heavily criticized by others as well.  For example, one

commentator called it "a decision so inconsistent with statutory text and policy as to inspire

surmise that the ruling was an April Fool's prank."  Ginsburg, *WNET v. Aereo:  The Second

Circuit Persists in Poor (Cable)Vision,* The Media Inst. (Apr. 23, 2013), *available at*

www.mediainstitute.org/IPI/2013/042313.php.  Others criticized "the court's rote application of

*Cablevision*," which they felt threatened to "eviscerate the transmit clause" of the Copyright Act.

Rasenberger & Pepe, *Copyright Enforcement and Online File Hosting Services:  Have Courts

Stuck the Proper Balance?*, 59 J. Copyright Soc'y U.S.A. 627, 645 (2012).[17]

Ultimately, none of the machinations required under the Second Circuit's analysis apply

---

[17] *See also Fox Television Stations*, 915 F. Supp. 2d at 1145–46 (criticizing New York court's interpretation of
Copyright Act and adoption of Aereo's argument that its service is not infringing because it merely allows its
subscribers to do what they could do at home, an argument already rejected by Congress); Brenner & Kay, *ABC v.
Aereo, Inc.:  When Is Internet Distribution a "Public Performance" Under Copyright Law*, 24 Intell. Prop. & Tech.
L.J. 12, 15 (Nov. 2012) (describing New York decision as "peculiar, technology-wise, in staking so much on 'one
copy to one subscriber'"); Karjala, *"Copying" and "Piracy" in the Digital Age*, 52 Washburn L.J. 245, 263 (2013)
("Instead of the law adapting itself to meet the needs of society under conditions of new technology, these judicial
interpretations push technology in odd directions as systems engineers seek to avoid falling on the wrong side of
what is essentially an arbitrary line.").

in this straightforward case.  The Copyright Act gives a copyright holder the exclusive right to "perform [its] copyrighted work *publicly*."  *See* 17 U.S.C. § 106(4) (emphasis added).  To perform works publicly, one need only transmit the performances "beyond the place from which they are sent," even where the transmissions are shown "in separate places" or "at different times."  17 U.S.C. § 101.  *See also Broad. Music, Inc. v. Rockingham Venture*, 909 F. Supp. 38, 45 (D. N.H. 1995) (public performance occurs when "sending out some sort of signal via a device or process to be received by the public at a place beyond the place from which it is sent").  "[C]ommercial enterprises whose basic retransmission operations are based on the carriage of copyrighted program material" must pay "copyright royalties to the creators of such programs."  H.R. REP NO. 94-1476, at 88–90 (1976).

Aereo is such a commercial enterprise.  It intercepts and transmits WCVB's copyrighted works and makes them available to the public over the internet for a monthly subscription fee.  By so doing, Aereo's transmissions are "received by the public at a place beyond the place from which [the transmissions were] sent."  17 U.S.C. § 101.  Aereo does so without authorization or license.  Aereo thus publicly performs WCVB's copyrighted work in clear violation of WCVB's exclusive rights under Section 106(4) of the Copyright Act.  *See* 17 U.S.C. § 101; H.R. REP NO. 94-1476, at 88–90; *Broad. Music, Inc.*, 909 F. Supp. at 45.

## IV.    CONCLUSION

For the foregoing reasons, Aereo's Motion to Transfer should be denied.

<div style="margin-left:40%">

Respectfully submitted,
HEARST STATIONS INC., d/b/a WCVB-TV
By its attorneys,

*/s/ James D. Smeallie*
James D. Smeallie (BBO #467380)
Joshua C. Krumholz (BBO #552573)
Brian G. Leary (BBO #548386)
Elizabeth M. Mitchell (BBO #638146)
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
</div>

Dated:  August 7, 2013

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on August 7, 2013.

*/s/ James D. Smeallie*
James D. Smeallie

#24696336_v13

21