UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HEARST STATIONS INC., d/b/a WCVB-TV,

Plaintiff,

v.

AEREO, INC.,

Defendant.

C.A. No. 1:13-cv-11649-NMG

**ORAL ARGUMENT REQUESTED
PURSUANT TO L.R. 7.1(d)**

**DEFENDANT AEREO, INC.'S CONSOLIDATED REPLY IN SUPPORT OF
(1) ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)
AND (2) ITS MOTION TO TEMPORARILY STAY PROCEEDINGS
<u>PENDING RESOLUTION OF ITS MOTION TO TRANSFER</u>**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION……………………………………………………………………………..1

ARGUMENT……………………………………………………………………………...2

    I.    CONSIDERATIONS OF JUDICIAL ECONOMY AND FAIRNESS
        WARRANT TRANSFER, AS WELL AS A STAY PENDING THE COURT'S
        DECISION ON AEREO'S MOTION TO TRANSFER ........................................ 2

    II.    A STAY AND TRANSFER WILL SERVE THE INTERESTS OF JUSTICE
        BY PREVENTING HEARST'S IMPROPER ATTEMPT TO HARM AEREO
        BY SEEKING INCONSISTENT RESULTS AND IMPOSING THE UNDUE
        BURDEN OF MULTI-FRONT, DUPLICATIVE LITIGATION.......................... 4

    III.    HEARST WILL NOT BE PREJUDICED BY A STAY AND TRANSFER;
        *CABLEVISION* HAS ALREADY BEEN FOLLOWED BY COURTS IN THE
        FIRST, SECOND, THIRD, FOURTH, NINTH, AND ELEVENTH CIRCUITS . 6

    IV.    A STAY SHOULD BE ENTERED UNTIL THE TRANSFER MOTION IS
        DETERMINED, AND HEARST'S OWN DELAY UNDERMINES ANY
        CLAIMS OF PREJUDICE TO IT FROM A STAY ............................................. 9

CONCLUSION.................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AGP Indus. SA v. JPS Elastromerics Corp.*,
   511 F. Supp. 2d 212 (D. Mass. 2007) ......................................................................9

*Am. Broad. Cos. v. Aereo, Inc.*,
   874 F. Supp. 2d 373 (S.D.N.Y. 2012) ("*Aereo I*") .........................................1, 5, 8

*Am. Broad. Cos. v. Aereo, Inc.*,
   2013 WL 3657978 (2d Cir. July 16, 2013) ("*Aereo III*") ...............................1, 5, 8

*Broadcast Music, Inc. v. Rockingham Venture*,
   909 F. Supp. 38 (D.N.H. 1995) ..............................................................................7

*Cartoon Network LLLP v. CSC Holdings, Inc.*,
   536 F.3d 121 (2d Cir. 2008) ("*Cablevision*") ............................................... passim

*Community Broadcasting Co. v. Time Warner Cable LLC*,
   598 F. Supp. 2d 154 (D. Me. 2009)……………………………………………………..7

*Cont'l Grain Co. v. The FBL-585*,
   364 U.S. 19 (1960) .................................................................................................3

*CoStar Group, Inc. v. LoopNet, Inc.*,
   373 F.3d 544 (4th Cir. 2004) .................................................................................6

*Disney Enterprises Inc. v. Hotfile Corp.*,
   798 F. Supp. 2d 1303 (S.D. Fla. 2011) ..................................................................6

*Fox Broad. Co. v. Dish Network LLC*,
   2013 WL 3814917 (9th Cir. July 24, 2013) ("*Dish Network*") ..........................6, 8

*Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*,
   915 F. Supp. 2d 1138 (C.D. Cal. 2012) ("*BarryDriller*").......................................8

*Io Group, Inc. v. Veoh Networks, Inc.*,
   586 F. Supp. 2d 1132 (N.D. Cal. 2008) .................................................................8

*Perfect 10, Inc. v. Giganews, Inc.*,
   2013 WL 2109963 (C.D. Cal. Mar. 8, 2013).........................................................8

*Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*,
   338 Fed. Appx. 329 (4th Cir. 2009).......................................................................6

ii

*Religious Tech. Center v. Netcom On-Line Comm. Svcs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ...................................................................6

*Righthaven LLC v. Democratic Underground LLC*,
   102 U.S.P.Q. 2d 1070 (D. Nev. 2012) ...............................................................6

*Society of Holy Transfiguration Monastery, Inc. v. Gregory*,
   689 F. 3d 29 (1st Cir. 2012)……………………………………………...……………7

*Sony Corp. of Am. v. Universal Studios, Inc.*,
   464 U.S. 417 (1984) ............................................................................................6

*Sony Music Entm't v. Cloud*,
   2009 WL 1507566 (E.D. Pa. May 29, 2009) ......................................................6

*Tovar v. Indiana*,
   2012 WL 3263948 (D. Me. Aug. 9, 2012) ..........................................................3

*U.S. v. George*,
   824 F. Supp. 2d 217 (D. Mass. 2011) .................................................................9

*Williams v. City of New York*,
   2006 WL 399456 (S.D.N.Y. Feb. 21, 2006) .......................................................3

*WNET, Thirteen v. Aereo, Inc.*,
   712 F.3d 676 (2d Cir. 2013) ("*Aereo II*") ....................................................1, 5, 8

## INTRODUCTION

This case should be transferred to the Southern District of New York, which has pending before it three cases concerning the application of the Copyright Act to the exact same technology at issue here.[1]  Moreover, these proceedings should be stayed until the Court reaches a decision on Aereo's Motion to Transfer.  It would be grossly inefficient and inconsistent with both judicial economy and the interests of justice to permit seriatim re-litigation of essentially the same case again and again.[2]

Hearst does not dispute that the Southern District of New York and the Second Circuit, in denying a request for a preliminary injunction against Aereo, thoroughly considered the operation of Aereo's technology and oversaw extensive discovery concerning that technology.[3] Nor does Hearst dispute that the Southern District of New York has already examined, in great depth, virtually all of the facts and legal issues required to resolve this case, and has been immersed in complicated issues regarding discovery and administration of those closely-related cases.   Rather, Hearst's main argument is premised on the notion that this Court should keep the case because it might reach a different result than the Southern District and Second Circuit.  This is not a proper argument against transfer and it is revealing of Hearst's true motivation: classic

---

[1] Aereo provides a remote individual antenna and DVR that consumers may use to record and watch local over-the-air broadcast television over the Internet.  Def. Aereo, Inc.'s Mem. of Law in Opp. to Hearst Stations Inc.'s Mot. for a Prelim. Inj., ECF No. 41 at 4-5.

[2] The only difference between this case and the cases pending in New York brought by the seventeen major broadcasters against Aereo is that Hearst is a new party (with aligned interests to those parties) and Hearst has plead additional copyright claims (distribution and derivative work), but those claims are based on the same facts about how the Aereo technology works.

[3] *Am. Broad. Cos. v. Aereo, Inc.*, 874 F. Supp. 2d 373 (S.D.N.Y. 2012) ("*Aereo I*"); *WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d Cir. 2013) ("*Aereo II*"); *Am. Broad. Cos. v. Aereo, Inc.*, Nos. 12-Civ-2807, 12-Civ-2786, 2013 WL 3657978 (2d Cir. July 16, 2013) ("*Aereo III*").

and unmistakable forum shopping.  Hearst argues that the primary case on which the Second

Circuit relied, *Cartoon Network LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008)

("*Cablevision*"), should not apply in the First Circuit.  Not only does Hearst cite no First Circuit

law to support that position, Hearst ignores the two cases within the First Circuit that have

addressed—and followed—*Cablevision*.  Hearst wants this Court to revisit issues that have

already been decided by the Second Circuit (and relied on by Aereo and many other industries),

as well as to potentially open and revisit all of the same discovery (fact and expert), procedural,

and other issues that the Southern District has been immersed in for over a year.[4]  Redoing all of

that work in this Court is directly contrary to the interests of judicial economy and would impose

an unfair and unjust burden on Aereo, forcing it to defend against virtually identical cases

brought by related parties in multiple venues, at the same time.  The interests of justice are

similarly undermined if Aereo is forced to address the merits of this case while its Motion to

Transfer is pending.

## ARGUMENT

### I.    CONSIDERATIONS OF JUDICIAL ECONOMY AND FAIRNESS WARRANT TRANSFER, AS WELL AS A STAY PENDING THE COURT'S DECISION ON AEREO'S MOTION TO TRANSFER

As set forth in Aereo's Motion to Transfer, justice weighs heavily in favor of transferring

this case to the Southern District of New York.  Because that Court has been so thoroughly

---

[4] There is no question that Hearst would have the opportunity in New York to conduct discovery unique to its claims; however, the primary issue in this case involves the nature of Aereo's technology and there has been extensive and comprehensive discovery on that matter in the New York federal courts including both expert and fact discovery, as well as detailed findings of fact. Both the Judge and Magistrate in New York are extremely familiar with the discovery process, parameters, requirements, and complexities in this case, having managed the case from inception, including the numerous complex discovery disputes that have arisen.  That Court is in the best position to integrate discovery in this case with discovery that has already taken place.

steeped in the precise issues that this Court would need to address, it would be a waste of this Court's resources, and highly prejudicial to Aereo, to permit Hearst to essentially re-do what has already been done by another Court.  *See Tovar v. Indiana*, No. 12-Civ-175, 2012 WL 3263948, at *2 (D. Me. Aug. 9, 2012) (The existence of a pending lawsuit in another forum that renders that court familiar with the relevant facts and legal issues "weigh[s] heavily toward transfer."); *Williams v. City of New York*, No. 03-Civ-5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) ("[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy. . . .").

The Court in New York has already decided a preliminary injunction motion in virtually identical circumstances and issued detailed findings of fact and law after exhaustive fact and expert discovery and a two-day hearing at which fact witnesses and experts testified.  Further, the Court in New York has been and is immersed in the complex administration of the related cases.  It has addressed dozens of discovery disputes dealing with complex issues of relevance and discoverability and has overseen a document production process that has involved the creation of secure data rooms for document review, and the production of over one million pages of documents.  Considerations of judicial economy take on increasing importance where, as here, the proposed transferee Court has managed a very complex and extensive discovery process and is intimately familiar with the issues of the case, including the history, parameters, and requirements of discovery and also the technology at issue.  *See Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

3

Hearst claims that a transfer to the Southern District of New York would somehow be inefficient *because* of the amount of discovery that has already been done.  Hearst appears to argue that the imminence of the close of discovery in those cases would affect Hearst.  This is incorrect. The Southern District of New York is in the best position to assess what has already been done, what specific issues related to Hearst might need to be addressed, and coordinate all of the proceedings.  Any necessary discovery unique to this case could be accomplished in that Court in short order and with reduced prejudice and burden on the parties.[5]

For the same reasons it would be wasteful and prejudicial to Aereo for this Court to redo the entire case, it would also be wasteful and prejudicial for this Court to begin to do so, and then transfer the case. Thus, the matter should be stayed until it is transferred.

## II.    A STAY AND TRANSFER WILL SERVE THE INTERESTS OF JUSTICE BY PREVENTING HEARST'S IMPROPER ATTEMPT TO HARM AEREO BY SEEKING INCONSISTENT RESULTS AND IMPOSING THE UNDUE BURDEN OF MULTI-FRONT, DUPLICATIVE LITIGATION

Hearst, which is based in New York and is an affiliate of three of the plaintiffs in the New York cases,[6] brought this suit (raising virtually the same legal and factual questions as three cases pending in the Southern District of New York) here rather than in New York for two reasons: (1) to try to obtain results inconsistent with those in the federal courts in New York;

---

[5]  Further, there is also a related declaratory judgment proceeding, addressing the same issues, filed by Aereo against CBS and its Boston, and other, affiliates.  *Aereo, Inc. v. CBS Broad., Inc.*, No. 13-Civ-3013 (AJN), S.D.N.Y.  That case, was filed on May 6, 2013, is in its initial stages.

[6] Upon information and belief, Hearst owns over twenty television stations across the country, which serve as the local affiliates of broadcasters ABC, NBC, and CBS.  *See* HEARST TELEVISION, INC., http://www.hearsttelevision.com/our_company/our_stations/index.html (last visited Aug. 23, 2013).

and/or (2) to try to open additional fronts in a war of attrition against Aereo. While Hearst accuses Aereo of forum shopping, the opposite is transparently true. Aereo is the ***defendant*** in the lawsuit that the broadcasters (including ABC, of which WCVB is the local affiliate) chose to file in the Southern District of New York. And not only did the broadcasters choose the Southern District as the venue for their fight against Aereo, they sought a nationwide injunction.

The broadcasters, however, have been rebuffed three different times now in their chosen forum: (1) by the Southern District of New York which denied the broadcasters' request for a preliminary injunction because they were unlikely to succeed on their claims (*Aereo I*); (2) by the Second Circuit, which affirmed the District Court's denial (*Aereo II*); and (3) by the Second Circuit sitting *en banc*, which denied the broadcasters' petition for review (*Aereo III*). Following these losses, Hearst filed in this Court essentially the same claims hoping for a different result. That is the definition of forum shopping and such behavior is contrary to basic principles of justice and judicial economy. Moreover, if Hearst is successful in its attempts to forum shop, it will likely lead to the proliferation of additional lawsuits in different jurisdictions, all seeking to litigate the identical issue of federal copyright law.

A vast amount of discovery, most of which concerns Aereo's technology and business, has already occurred in New York.[7] It would be grossly prejudicial to force Aereo to re-do what has already been done in the Southern District. To require Aereo to fight the same battle on multiple fronts in multiple courts would be fundamentally unfair, and would severely tax a small start-up company. A stay of any further proceedings in this Court and a subsequent transfer are

---

[7] Aereo employees have not only been deposed in the Southern District of New York litigations but, in several cases, have been deposed multiple times in connection with both the preliminary injunction hearing and discovery generally.

5

warranted here to prevent this injustice.  Hearst and the other broadcasters should not be allowed to accomplish indirectly, through a war of attrition, what they could not accomplish directly through the federal courts in New York.

### III.   HEARST WILL NOT BE PREJUDICED BY A STAY AND TRANSFER; CABLEVISION HAS ALREADY BEEN FOLLOWED BY COURTS IN THE FIRST, SECOND, THIRD, FOURTH, NINTH, AND ELEVENTH CIRCUITS

Hearst's Oppositions to Aereo's Motion Transfer and Motion to Stay are premised on the notion that Hearst should be allowed to re-litigate the issues already decided by the Southern District of New York and the Second Circuit because the application of the *Cablevision* precedent by those Courts would somehow prejudice Hearst.  As a threshold matter, this argument makes plain Hearst's forum shopping motivation.  Further, that argument is based on the false premise that the *Cablevision* case—which is directly relevant to three of the four copyright claims Hearst asserts (reproduction, public performance, and distribution), and was relied upon by the Southern District of New York and the Second Circuit in denying the broadcasters' request for an injunction against Aereo—is somehow an "outlier."  That argument is simply false.

*Cablevision*, and its thorough analysis of the Copyright Act, evolved from Supreme Court precedent and case law from other circuits,[8] and Courts in the First, Second, Third, Fourth, Ninth, and Eleventh Circuits have followed *Cablevision*.[9]  No federal appellate court has

---

[8] *Sony Corp. of Am. v. Universal Studios, Inc.*, 464 U.S. 417 (1984); *Religious Tech. Center v. Netcom On-Line Comm. Svcs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550-51 (4th Cir. 2004).

[9] *See, e.g., Fox Broad. Co. v. Dish Network LLC*, No. 12-Civ-57048, 2013 WL 3814917, at *4, *5 (9th Cir. July 24, 2013) ("*Dish Network*") (relying on *Cablevision* to hold that an ad-skipping DVR offered by Dish Network likely does not infringe Fox's copyrights); *Sony Music Entm't v. Cloud*, No. 08-Civ-1200, 2009 WL 1507566, at *3 (E.D. Pa. May 29, 2009) (articulating the

declined to follow *Cablevision*.  The two cases within the First Circuit that have addressed

*Cablevision* have followed it.  In *Society of Holy Transfiguration Monastery, Inc. v. Gregory*, the

First Circuit followed *Cablevision*'s reproduction analysis.  689 F. 3d 29, 54-55 (1st Cir. 2012).

There is nothing in *Monastery* to suggest the First Circuit would not follow *Cablevision* on other

issues.  In *Community Broadcasting Co. v. Time Warner Cable LLC*, the Maine District Court

expressly adopted *Cablevision*'s analysis of the Transmit Clause as it relates to a public

performance claim.  598 F. Supp. 2d 154, 161-62 (D. Me. 2009) (citing *Cablevision* for the

propositions that "in determining whether a particular transmission is 'to the public,' 'any factor

that limits the potential audience of a transmission is relevant'" and "'the transmit clause directs

us to identify the potential audience of a given transmission, i.e. the persons "'capable of

receiving'" it, to determine whether that transmission is made "'to the public'"").[10]

     Not only is *Cablevision* not an "outlier," it is such a significant precedent that the cloud

computing industry relies on *Cablevision*'s public performance analysis of the Copyright Act in

---

material object test set forth in *Cablevision*); *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*, 338 Fed. Appx. 329, 337 (4th Cir. 2009) (citing *Cablevision* on "fixed" copy requirement for reproduction); *Disney Enterprises Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1309-10 (S.D. Fla. 2011) (following *Cablevision* holdings regarding requirement of "volitional act" and applying the holdings to claim of distribution violation); *Righthaven LLC v. Democratic Underground LLC*, 102 U.S.P.Q. 2d 1070, 1071 (D. Nev. 2012) (following *Cablevision*'s holding that a volitional act is a requirement of direct infringement of the reproduction right).

[10] The only case that Hearst cites from a court within the First Circuit on the issue of public performance is *Broadcast Music, Inc. v. Rockingham Venture*, 909 F. Supp. 38 (D.N.H. 1995). This decision is pre-*Cablevision* and only provides background information on the Transmit Clause to determine whether there are disputed material facts at issue.

creating and deploying its technology.[11]   A five-year old case that has been applied in six

Circuits, including the First Circuit, and has helped form the foundation of an entire industry that

informs every aspect of our lives, cannot be considered in outlier.  It is Hearst who urges the

"outlier" on this Court.  Hearst relies on the **_dissenting_** opinions in the Aereo cases and a single

District Court opinion in California to try to make its point.  Hearst urges on this Court the

dissent's analysis of *Cablevision* and Aereo's technology, while barely mentioning, let alone

analyzing, the majority opinions in those cases.  Review of those decisions makes clear that

Hearst's argument is the aberration.[12]   As for the single decision by a district court that Hearst

relies upon, *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d

1138 (C.D. Cal. 2012) ("*BarryDriller*"), that decision was based on virtually no factual findings

and is currently on appeal.  It also runs counter to other district court decisions in California that

have favorably applied *Cablevision*.[13]   Moreover, after the appeal in *BarryDriller* was briefed,

the Ninth Circuit expressly relied on *Cablevision* in the *Dish Network* case, adopting

*Cablevision*'s analysis and view of the reproduction clause (which Hearst contends Aereo

violates) and applied *Cablevision* in its analysis of Fox's distribution claim (a claim also made

---

[11] *See* Amicus Brief of the Computer & Communications Industry Ass'n and the Internet Ass'n filed in *Aereo II* and submitted to this Court as Exh. C to the Declaration of R. David Hosp in support of Aereo's Opposition to Hearst's Motion for Preliminary Injunction (ECF Nos. 42-3).

[12] Aereo has fully addressed the *Aereo I*, *Aereo II*, *Aereo III*, and *Cablevision* decisions in its Opposition to Hearst's Motion for a Preliminary Injunction (ECF No. 41 at 6-13).

[13] *See, e.g.*, *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-Civ-7098, 2013 WL 2109963, at *6, *7 (C.D. Cal. Mar. 8, 2013) (noting that the *Cablevision* holding is "particularly helpful" and provides a "persuasive explanation" of the volitional conduct requirement); *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1148 (N.D. Cal. 2008) (following *Cablevision* and requiring volitional act for infringement of the reproduction right).

by Hearst).  2013 WL 3814917, at *4, *7.  The Ninth Circuit gave no indication it would not also follow *Cablevision* on the issue of public performance.

Thus, Hearst's claim that it will be prejudiced because the New York Courts will apply *Cablevision* should be rejected both because it essentially confirms that Hearst is forum shopping and because Hearst cannot claim prejudice because the New York court will apply precedent that has found wide acceptance among other Courts and has been relied upon by industries for years in developing consumer technologies.[14]

## IV.   A STAY SHOULD BE ENTERED UNTIL THE TRANSFER MOTION IS DETERMINED, AND HEARST'S OWN DELAY UNDERMINES ANY CLAIMS OF PREJUDICE TO IT FROM A STAY

Although Aereo has filed its opposition to Hearst's motion for a preliminary injunction in accordance with the Court's Order,[15] Aereo still urges the Court to stay these proceedings pending a decision on the Motion to Transfer.  If the action will be transferred and subject to the

---

[14] Even if the Court were to retain this case, *Cablevision* would still inform the Court's analysis if existing First Circuit precedent did not address every specific issue in this case. *See, e.g.*, *AGP Indus. SA v. JPS Elastromerics Corp.*, 511 F. Supp. 2d 212, 214 (D. Mass. 2007) (holding that ambiguity in statute "present[ed] a question of first impression in the First Circuit, and so the court looks to other circuit courts for guidance" and adopting Second Circuit law); see also *U.S. v. George*, 824 F. Supp. 2d 217, 220 (D. Mass. 2011) (Gorton, J.) (considering analogous case law in other circuits). Interestingly, all but one of the cases Hearst relies on to support its position that the First Circuit should ignore precedent from other circuits are cases from other circuit and district courts.  Hearst cites no law in the First Circuit that supports its contention that "WCVB and the Commonwealth's citizens are entitled to this Court's independent consideration and judgment of WCVB's claims."  Pl.'s Opp'n to Def. Aereo, Inc.'s Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), ECF No. 38 at 17.

[15] While Aereo filed its Opposition to Hearst's Motion for a Preliminary Injunction in accordance with the Court's Order, if the Court intends to deny the Motion to Transfer and proceed on the merits on the Motion for a Preliminary Injunction, Aereo requests discovery on Hearst's allegations of harm.  Since a consumer unquestionably has a right to use an antenna and DVR, both Aereo and the Court need to understand how a consumer's use of a remote individual version of that same equipment to watch free over-the-air broadcasts could possibly harm Hearst.

9

oversight of another Court, it would make sense for that Court to undertake the very important matters of determining a preliminary injunction and setting a schedule. If the Court is going to transfer this case, then the proceedings should be stayed so that the court that is going to handle the matter going forward will address these scheduling and substantive issues.

Hearst claims that it will be harmed by the "delay" if a stay is entered. Aereo has not asked the Court to "indefinitely postpone" these proceedings as Hearst contends: rather, Aereo asked the Court for a very limited stay to allow the Court to decide Aereo's Motion to Transfer. Any short delay pending resolution of the transfer issue will not prejudice Hearst. Hearst's argument also is belied by its own delay in seeking such relief. Hearst failed to take any action after Aereo announced in January 2013 that it would launch in Boston. Hearst also failed to act for months after Aereo did launch in Boston. Hearst only filed suit in this Court after the New York plaintiffs lost their appeal to the Second Circuit. Moreover, Hearst has not alleged any harm it is actually suffering from Aereo's operation in Boston.[16] To the extent there are any urgent issues applicable only to Hearst, the Court in the Southern District of New York is fully capable of addressing such exigencies.

## CONCLUSION

For the foregoing reasons, Aereo requests that the Court **ALLOW** Aereo's Motion to Stay pending transfer and **ALLOW** its Motion to Transfer Venue.

---

[16] Aereo addressed Hearst's claims of irreparable harm in its Opposition to Hearst's Motion for a Preliminary Injunction. *See* ECF No. 41 at 17-19.

Dated: August 23, 2013                        ___/s/  Frank E. Scherkenbach___
                                              FISH & RICHARDSON P.C.
                                              Frank E. Scherkenbach (BBO # 653,819)
                                              Christopher Dillon (BBO # 640,896)
                                              R. David Hosp (BBO # 634,091)
                                              Mark S. Puzella (BBO # 644,850)
                                              Sheryl Koval Garko (BBO # 657,735)
                                              Matthew C. Berntsen (BBO #678,533)
                                              One Marina Park Drive
                                              Boston, MA 02210
                                              Telephone: (617) 542-5070
                                              Facsimile:  (617) 542-8906
                                              Email:      scherkenbach@fr.com
                                                          dillon@fr.com
                                                          hosp@fr.com
                                                          puzella@fr.com
                                                          garko@fr.com
                                                          berntsen@fr.com

                                              Tal Kedem (admitted *pro hac vice*)
                                              Elizabeth Brenckman (admitted *pro hac vice*)
                                              601 Lexington Avenue, Floor 52
                                              New York, NY 10022
                                              Telephone:    (617) 542-5070
                                              Facsimile:    (617) 542-8906
                                              Email:        kedem@fr.com
                                                            brenckman@fr.com

                                              *Attorneys for Defendant Aereo, Inc.*

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the NEF (NEF) and paper copies will

be sent to those indicated as non-registered participants on August 23, 2013.

                                            ____/s/ *Frank E. Scherkenbach*_____ _____
                                            Frank E. Scherkenbach