**United States District Court**
**District of Massachusetts**

————————————————————  )
)
HEARST STATIONS INC. d/b/a              )
WCVB-TV,                                )
)
          Plaintiff,                    )     Civil Action No.
)     13-11649-NMG
          v.                            )
)
AEREO, INC.,                            )
)
          Defendant.                    )
————————————————————  )

**MEMORANDUM & ORDER**

GORTON, J.

This case arises out of a copyright infringement dispute between two media companies.  Plaintiff Hearst Stations Inc. ("Hearst"), which owns the local television station WCVB-TV ("WCVB"), alleges that defendant Aereo, Inc. ("Aereo") is intercepting its television signals and converting its programs into a different format for retransmitting over the internet without compensating WCVB.  That, says plaintiff, infringes WCVB's exclusive rights under the Copyright Act.

Pending before the Court are Hearst's motion for a preliminary injunction (Docket No. 4) and Aereo's motions to transfer (Docket No. 20) and stay proceedings while the Court considers its motion to transfer (Docket No. 23).  For the reasons that follow, all three motions will be denied.

- 1 -

I.    **Background**

    A.    **Hearst and WCVB-TV**

      Hearst is a Nevada corporation with a principal place of business in New York, New York.  It owns 29 broadcast stations throughout the country, including WCVB, a Boston-area television station with a main studio in Needham, Massachusetts that broadcasts over Channel 5.  WCVB operates under a license from the Federal Communications Commission which allows it to broadcast over the air and requires it to provide content such as closed captioning and an emergency alert system.

      Hearst claims that WCVB creates, produces, owns, broadcasts and distributes more than 43 hours of original programming every week and has been recognized nationally for the high quality of its local programming.  It alleges that WCVB spends considerable amounts of money, time, energy and creativity on producing original programming and building the infrastructure that allows it to transmit and distribute the programming.  WCVB's two main sources of revenue are commercial advertising and fees paid by other companies for the right to retransmit and resell WCVB's signal and it hopes to profit in the future from making its programming available over the Internet.

**B.    Aereo**

Aereo is a New York corporation.  Hearst alleges that Aereo's principal office is in Boston but Aereo submits that its principal place of business is in Long Island City, New York.

Aereo uses antenna and digital video recording ("DVR") technology to transmit over-the-air television broadcasts over the internet to its fee-paying subscribers.  The technology allows users to watch programming "live" (with a few second delay) or to record it for viewing at a later time.

In either case, when a user elects to watch a program, an antenna that is assigned exclusively to that user for that time period intercepts the signal as the program is broadcast over-the-air and transmits it to the user's designated space on Aereo's hard drive.  Aereo has installed banks of small antennas throughout the Boston area for this purpose.

Next, Aereo's system converts the signal from its original format to a different digital format that allows the user to access the program over the internet.  It then generates three copies of the program, each at a different "quality rate," to enable recording and rewinding and to allow each user to choose the copy most compatible with his or her internet connection.

When a user elects to watch a program "live," at least one copy of the program is stored in a user-specific "directory" on Aereo's hard drive until the user finishes watching.  Users who

select this option receive a notice on their computers or other
devices which advises:

> When you press 'Watch' you will start recording this
> show, allowing you to pause and rewind the program.

If a user elects to record a program, all three copies are
retained in the user's directory on Aereo's hard drive and,
according to Hearst, may be kept there permanently.

Finally, a user accesses her individual copy of a program
by streaming it over the internet from Aereo's hard drive to her
personal computer, smart phone, or other internet-enabled
device.  The system does not permit users to download permanent
physical copies of programs to their personal hard drives.
Instead, all copies are retained on Aereo's remote hard drive.

Hearst's amended complaint alleges that, by providing this
service, Aereo engages in

> clear copyright violations that put WCVB's entire
> business model at risk and undermine a regulatory
> regime carefully constructed by Congress.

Specifically, it contends that Aereo violates WCVB's exclusive
rights under the Copyright Act, 17 U.S.C. § 106.

Aereo, for its part, claims that it merely provides
technology that allows consumers to do what they are legally
entitled to do: 1) access free and legally accessible over-the-
air television broadcasts using an antenna, 2) create
individual, unique recordings of those broadcasts for personal

use and 3) play the individual, unique recordings on personal devices.  It admits that it has not received any authorization to provide WCVB's programming to its subscribers.

### C.   Procedural History

Aereo formally launched its service in Boston on May 15, 2013, and the service became generally available to subscribers later that month.  Hearst filed suit and moved for a preliminary injunction on July 9 and amended its complaint on July 30, 2013. On July 16, Aereo moved to transfer the case to the Southern District of New York where Judge Alison J. Nathan is already presiding over two cases to which Aereo is a party and that involve similar issues.  It also moved to stay proceedings pending resolution of that motion.  The Court held a hearing with respect to the pending motions on September 18, 2013.

## II.   <u>Aereo's Motions to Transfer and Stay</u>

For the reasons that follow, the Court will deny Aereo's motion to transfer the case to the Southern District of New York.  Aereo's motion to stay the case pending resolution of its transfer motion will therefore become moot and will also be denied.

### A.   Legal Standard

District courts have the discretion to transfer "any civil action to any other district or division where it might have been brought" for the "convenience of parties and witnesses" and

"in the interest of justice." 28 U.S.C. § 1404(a).  Hearst does

not dispute that the case "might have been brought" in the

Southern District of New York so the Court's analysis is limited

to whether convenience and justice favor transfer.

While the decision to transfer a case under § 1404 lies

solely within the discretion of the court, there is a

presumption in favor of the plaintiff's choice of forum and the

defendant must bear the burden of proving that a transfer is

warranted. Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex,

Inc., 249 F. Supp. 2d 12, 15 (D. Mass. 2002).  Factors to be

considered in determining whether transfer is warranted include

1) the plaintiff's choice of forum, 2) the relative convenience

of the parties, 3) the convenience of the witnesses and location

of documents, 4) any connection between the forum and the

issues, 5) the law to be applied and 6) the state or public

interests at stake. Id. at 17.

### B.  Application

Aereo maintains that transfer is warranted because 1) Judge

Nathan is already familiar with the facts and legal issues that

will arise in this dispute and therefore will be able to avoid

duplicative discovery and 2) Hearst has engaged in impermissible

forum-shopping by filing in this Court rather than in New York.

Aereo's arguments in favor of transfer do not overcome the

presumption in favor of Hearst's chosen forum.  Even if the

Court were inclined to transfer this case to New York, the actions pending before Judge Nathan are already quite advanced and therefore transfer is virtually guaranteed to either delay litigation or unfairly burden Hearst.

Nor is the Court persuaded that it would be unjust to allow Hearst's suit to proceed in this forum.  Hearst is suing Aereo in its capacity as WCVB's owner and only seeks to enjoin Aereo with respect to WCVB's local programming.  As such, it is the hometown plaintiff for the purposes of this litigation and is entitled to a strong presumption in favor of its choice of forum. See Kettenbach v. Demoulas, 822 F. Supp. 43, 44 (D. Mass. 1993); Layton v. Nat'l Freight, Inc., 2012 WL 5419140, at *2 (S.D. Miss. Nov. 5, 2012) (reasoning that plaintiff who sues in home forum has not "venue shopped").  Hearst's decision to limit the scope of the suit to WCVB's local programming and Aereo's local activities also weighs in favor of resolving the suit here rather than in New York. See Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co., 402 F. Supp. 2d 343, 354 (D. Mass. 2005) (noting local interest in having local controversies decided in the local forum).

## III. **Hearst's Motion for a Preliminary Injunction**

Hearst seeks to enjoin Aereo from infringing WCVB's exclusive rights under the Copyright Act, 17 U.S.C. § 106.  For the reasons that follow, Hearst's motion will be denied.

### A.   Legal Standard

To prevail on its motion, Hearst must establish

> that [it] is likely to succeed on the merits, that
> [it] is likely to suffer irreparable harm in the
> absence of preliminary relief, that the balance of
> equities tips in [its] favor, and that an injunction
> is in the public interest.

Voices of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645

F.3d 26, 32 (1st Cir. 2011) (quoting Winter v. Natural Res. Def.

Council, Inc., 555 U.S. 7, 129 (2008)).

Of these factors, the likelihood of success on the merits

"normally weighs heaviest on the decisional scales." Coquico,

Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009).

This factor is also given particular weight in copyright cases

because "the resolution of the other three factors often turns

on the plaintiff's likelihood of success." Id.

### B.   Application

#### 1.   Likelihood of Success on the Merits

In the instant case, Hearst claims that Aereo's services

violate WCVB's exclusive rights under § 106 of the Copyright Act

to 1) publicly perform, 2) reproduce, 3) distribute and 4)

prepare derivative works based on its copyrighted programming.

Hearst fails to make a sufficient showing that it is likely to

prevail on any of these claims and therefore this factor weighs

against a preliminary injunction in its favor.

### a.   Exclusive Right to Perform Copyrighted Work Publicly

The most hotly contested issue is whether Aereo infringes WCVB's exclusive right to transmit its works to the public.

### i.   Relevant Statutory Provisions

Section 106 of the Copyright Act gives copyright owners the exclusive rights to "perform the copyrighted [audiovisual] work publicly." 17. U.S.C. § 106(4).  Section 101 of the Act explains that "to perform" a work is

> to recite, render, play, dance or act it, either directly or by means of any device or process or, in the case of a motion picture or other audiovisual work, to show its images in any sequence or make the sounds accompanying it audible.

Id. § 101.

Furthermore, the statute distinguishes between public and private performances.  The "Transmit Clause" of § 101 defines "to perform a work publicly" as

> to transmit or otherwise communicate a performance or display of the work to a [public place] or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

Id. Section 101 elsewhere defines "to transmit" as "to communicate [something] by any device or process whereby images or sounds are received beyond the place from which they are

sent." Id.  A "device or process" is also defined broadly to include "one now known or later developed." Id.

### ii. Legislative History

The House Committee on the Judiciary's Report on the 1976 revisions to the Copyright Act provides additional insight into the intended meaning of "perform" and "public performance."  The report explains that the same copyrighted work may be "performed" in various ways:

> Concepts of public performance and public display cover not only the initial rendition or showing, but also any further act by which that rendition or showing is transmitted or communicated to the public. Thus, for example: a singer is performing when he or she sings a song; a broadcasting network is performing when it transmits his or her performance (whether simultaneously or from records); a local broadcaster is performing when it transmits the network broadcast; a cable television system is performing when it retransmits the broadcast to its subscribers; and any individual is performing whenever he or she . . . communicates the performance by turning on a receiving set.

H.R. Rep. No. 94-1476, at 63 (1976).

### iii. Case Law

The First Circuit Court of Appeals has not addressed whether technology that allows users to record copies of over-the-air broadcasts of television programs on remote servers and view the programs using the internet violates broadcasters' exclusive public performance rights.

The Second Circuit Court of Appeals is the only circuit court to address this issue to date and it has held that this technology does not infringe the copyright holder's exclusive right to perform its work publicly.  First, in the 2008 Cablevision case, the Second Circuit held that "RS-DVR" technology that allows users to record programming on remote servers for later viewing does not infringe the original broadcaster's public performance right because technology's manner of transmitting a recorded program to the viewer who recorded it did not constitute a "public performance." Cartoon Network LP v. CSC Holdings, Inc. (Cablevision), 536 F.3d 121, 137 (2d Cir. 2008).  In 2013, the Second Circuit applied Cablevision's reasoning to Aereo's service and found that Aereo's transmissions to subscribers also did not infringe. WNET, Thirteen v. Aereo, Inc., 712 F.3d 676 (2d Cir. 2013).  The court described Cablevision's holding as resting on two "essential facts": 1) the RS-DVR system created unique copies of each program a customer wished to record and 2) a customer could only view the unique copy that was generated on his behalf. Id. It found that Aereo's system, which employs individually-assigned antennas to create copies unique to each user and only at the user's request, shares these two traits. Id. at 690.

In contrast, Judge Denny Chin, who dissented in the WNET
case and from the Second Circuit's denial of a rehearing in
banc, contends that the majority erred by

> erroneously conflat[ing] the phrase 'performance or
> display' with the term 'transmission,' shifting the
> focus of the inquiry from whether the transmitter's
> audience receives the same content to whether it
> receives the same transmission.

WNET, Thirteen v. Aereo, Inc., 722 F.3d 500, 507 (2d Cir. 2013)
(Chin, J., dissenting).  Two district courts have similarly
reasoned that what makes the transmission "public" is not its
intended audience of any given copy of the program but the
intended audience of the initial broadcast. See Fox Television
Stations, Inc. v. FilmOn X LLC, Civil Action No. 13-758, 2013 WL
4763414, at *25 (D.D.C. Sept. 5, 2013); Fox Television Stations,
Inc. v. BarryDriller Content Sys., PLC, 915 F. Supp. 2d 1138,
1144 (C.D. Cal. 2012).

### iv.  Application

Hearst urges the Court to adopt the latter interpretation
and argues that Aereo's services clearly fall within the
definition of transmitting to the public because Aereo is
transmitting a performance of the original program to members of
the public.  It contends that the fact that each user views a
unique copy of the program is irrelevant to the analysis.

Aereo responds that it is transmitting private rather than
public performances per Cablevision.  It also argues that

Hearst's suggestion that the relevant performance is the copyrighted work reads the terms "a performance or display" out of the statutory phrase "a performance or display of the work".

Aereo's interpretation is a better reading of the statute because the "canon against surplusage" requires this Court to give meaning to every statutory term if possible. See Cablevision, 536 F.3d at 135-36.  The House Report accompanying the 1976 amendments, which explains that the process of communicating a copyrighted work from its original creator to the ultimate consumer may involve several "performances," provides further support. See H.R. Rep. No. 94-1476, at 63.  In short, while the Transmit Clause is not a model of clarity, the Court finds at this juncture that Aereo presents the more plausible interpretation.  As such, Hearst has not persuaded the Court that it is likely to succeed on the merits of its public performance claim.

> **b.   Exclusive Right to Reproduce Copyrighted Work**

Hearst also argues that Aereo violates WCVB's exclusive right to reproduce its copyrighted work or authorize others to do so by creating three copies of WCVB's copyrighted programming every time a consumer chooses to watch or record a program and saving the subject copies for longer than a "transitory" period.

### i.  Legal Standard

Copyright holders enjoy the exclusive right "to reproduce the copyrighted work in copies" and to authorize others to do the same. 17 U.S.C. § 106(1).  "Copies" are

> material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.

Id. § 101.  A work is "fixed" when it is

> sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.

Id.

### ii.  Application

Aereo contends that it cannot be liable for infringing WCVB's exclusive right to reproduce WCVB's copyrighted works because its users provide the volitional conduct that creates the copy of the program they select.  Aereo asserts that there is a well-established principle that a technology provider cannot be held directly liable on a copyright claim for providing a machine that responds automatically to user commands.

The First Circuit has not decided if a plaintiff claiming infringement must show volitional conduct on the part of the defendant.  See Soc'y of Holy Transfig. Monastery, Inc. v. Gregory, 689 F.3d 29, 55 (1st Cir. 2012).  The Second, Third,

and Fourth Circuits have, however, imposed such a requirement. Those courts reason that holding a media company liable just because it provides technology that enables users to make copies of programming would be the rough equivalent of holding the owner of a copy machine liable because people use the machine to illegally reproduce copyrighted materials. See, e.g., CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 550 (4th Cir. 2004).

Requiring a showing of volitional conduct comports with the general principle that, even with a strict liability statute such as the Copyright Act, the challenged conduct must cause the harm. See Religious Tech. Ctr. v. Netcom On-Line Commc'ns Serv., Inc., 907 F. Supp. 1361, 1370 (N.D. Cal. 1995). The Court finds that, in this case, it is likely that the user supplies the necessary volitional conduct to make the copy. The fact that Aereo users have the option to watch programs "live" does not command a different result because those users are informed that the system will create a copy of the program so that they can pause and rewind. This is a closer question than the issue of public performance, however, and discovery could disclose that Aereo's service infringes WCVB's right to reproduce its work.

### c. Exclusive Right to Distribute Copyrighted Work to the Public

Hearst also submits that Aereo violates WCVB's exclusive right to distribute its copyrighted works to the public "by sale

or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3).  The Copyright Act does not define what it means to "distribute" but courts have interpreted it to entail an "actual dissemination of either copies or phonorecords." <u>Atl. Recording Co.</u> v. <u>Howell</u>, 554 F. Supp. 2d 976, 981 (D. Ariz. 2008) (collecting cases).  Here, Aereo's technology allows users to stream but not download programming. As such, Aereo is more aptly described as "performing" than "distributing" copyrighted works. <u>See</u> William F. Patry, 3 <u>Patry on Copyright</u> § 8:23 (March 2013).  The Court thus finds it unlikely that Hearst could prevail on its claim that Aereo is unlawfully distributing WCVB's copyrighted works.

> **d.    Exclusive Right to Create Derivative Works**

The Court will quickly dispose of Hearst's argument that Aereo's act of reformatting intercepted programming violates WCVB's right to prepare derivative works. 17 U.S.C. § 106(2). Hearst has presented no legal authority nor is the Court aware of any for the proposition that Aereo's technology creates a derivative work merely by converting programs from their original digital format to a different digital format compatible with internet streaming.

### 2.   Irreparable Harm

The Court finds that Hearst has made a minimal showing of irreparable harm that is an insufficient basis for entering a preliminary injunction in its favor.

### a.   Legal Standard

Irreparable harm is "a substantial injury that is not accurately measureable or adequately compensable by money damages." Ross-Simons of Warwick v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996).  Plaintiffs alleging irreparable harm must show more than a "tenuous or overly speculative forecast of anticipated harm." Id.

In the preliminary injunction context, the First Circuit measures irreparable harm

> on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.

Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 42-43 (1st Cir. 2010) (internal quotation marks and citations omitted).

### b.   Application

Hearst suggests that Aereo's services will irreparably harm its ability to profit through 1) retransmission fees, 2) advertising fees and 3) new revenue streams that may result from making WCVB's programming available over the internet.

- 17 -

The Court finds that it is possible that WCVB will be irreparably harmed in its ability to negotiate retransmission fees with cable providers.  Cable, satellite and other television communications companies currently pay WCVB retransmission fees in exchange for the right to transmit WCVB's signal.  WCVB's President and General Manager averred that Aereo's service jeopardizes these arrangements in two ways: 1) its users might cancel their cable subscriptions and, as a result, the cable companies will have less money to pay in retransmission fees and 2) the presence of a low-cost competitor harms WCVB's bargaining position with the cable companies and may even lead the companies to stop paying WCVB altogether.

Yet such a showing does not overcome Hearst's inability to demonstrate a likelihood of success on the merits. See Braintree Labs., 622 F.3d at 42-43.  While the prospect of harm is real, Hearst has not shown that WCVB will suffer the "full magnitude" of the claimed harm before the Court disposes of the case on the merits.  Instead, it seems more likely that the harm will take several years to materialize. See Am. Broad Cos., Inc. v. Aereo, Inc., 864 F. Supp. 2d 373, 399-400 (S.D.N.Y. 2012).

Next, Hearst has not made a convincing showing that WCVB will be irreparably harmed in its ability to generate advertising revenue.  Hearst's claim that WCVB will not be able to measure viewers who access its programming through Aereo is

simply not true.  Nielsen, one of the main organizations tracking viewership for such purposes, announced in February, 2013, that it is beginning to include online viewership in its viewership totals. <u>See</u> Hosp. Decl., Docket No. 42, Ex. E.

Similarly, Hearst's claim that Aereo's services threaten its prospects of profiting from putting its programs online does not meet the standard for irreparable harm because WCVB's plans to put programming online are insufficiently developed.

### 3.   Balance of Hardships and Public Interest Factors

The balance of hardships does not favor one side over the other.  Hearst has demonstrated some likelihood of injury but any harm will likely take several years to materialize if the Court does not enjoin Aereo from streaming WCVB's local programming.  Aereo, for its part, overstates the effect that a narrow injunction envisioned by Hearst would have on its business.  It would still be able to provide its users with access to the national programming that airs on WCVB and all programming on the other local channels.

Similarly, the public interest factor cuts both ways. Hearst plausibly contends that a preliminary injunction in its favor will make it more likely that WCVB has the financial resources to continue to offer its highly-regarded and unique local programming to the Boston community.  Aereo responds that enjoining its services will harm the public because it will take

off the table a "lawful and innovative option for consumers to access over-the-air broadcasting."  The Court finds that those contentions balance out and therefore this factor does not weigh heavily in its analysis.

### C.  Conclusion

After considering the relevant factors, the Court finds that a preliminary injunction is unwarranted.  Hearst has not demonstrated a sufficient likelihood of success on the merits nor the requisite irreparable harm and therefore it is not entitled to that "extraordinary and drastic remedy." See Voice of the Arab World, 645 F.3d at 32.

### ORDER

Accordingly,

1) Aereo's motion to transfer to the Southern District of New York (Docket No. 20) is **DENIED;**

2) Aereo's motion to stay proceedings pending resolution of its transfer motion (Docket No. 23) is **DENIED AS MOOT;** and

3) Hearst's motion for a preliminary injunction (Docket No. 4) is **DENIED.**


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 8, 2013